GULF CENTRAL PIPELINE COMPANY, Plaintiff,

v.

MOTOR VESSEL LAKE PLACID, Her Engines, Tackle, Apparel, Furniture, etc. and Atlantic Shipping Company, S.A., Defendants.

No. 69–434.

United States District Court, E. D. Louisiana, New Orleans Division.

July 31, 1970.

William E. O'Neil, Charles Lugenbuhl, New Orleans, La., for plaintiff.

Robert B. Deane, Marshall Ballard, III, M. D. Yager, David Vosbein, New Orleans, La., for defendants.

RUBIN, District Judge:

█ A third party defendant here seeks to stay the determination of the merits of the claim against it pending arbitration. Since the third party defendant has been dilatory in seeking the stay, to the prejudice of the third party plaintiff, laches bars it from the relief sought.

On February 28, 1969, Gulf Central Pipeline Company sued the MS LAKE PLACID in rem, and the vessel's charterer, Atlantic Shipping Company, in personam, for alleged damage to four shipments of steel line pipe carried from Antwerp to New Orleans, and discharged during the period from December 17, 1968 to February 27, 1969, after an extended interruption due to a longshoreman's strike. In April 1969, Superior Shipping Company answered the suit, as claimant of the vessel. It denied liability, and asserted a cross claim against Atlantic contending that Atlantic had violated the terms of its charterparty from Superior. The charterparty is a "Gencon" form, dated Hamburg, November 1, 1968, between Superior, as owner of the LAKE PLACID, and Atlantic, as charterer. Clause No. 35 of that charterparty provides for the arbitration in New York of any disputes arising out of the contract, with claim to be made in writing and claimants' arbitrator appointed within 18 months of final discharge.

The court held a conference with counsel to determine the status of the case on February 3, 1970. Another conference was held on March 13, 1970, and the case was set for trial on September 2, 1970. Then, on March 24, Atlantic filed a motion to stay prosecution of Superior's cross claim. On the same day, Atlantic filed an answer to the cross claim and a third party complaint against T. Smith & Son, Inc., as stevedore.

There has already been an arbitration of another issue under the specific clause of the charterparty referred to in charterers' motion to stay. The arbitration commenced in January 1969, there were hearings before the arbitrators until July 1969; and a final award was rendered December 22, 1969.

Had Atlantic demanded arbitration when suit was brought over a year ago, the respective responsibility of the owners and charterers under the charterparty would already have been determined and this court would be in the position

upon the conclusion of the trial to enforce the arbitrator's award as part of its decree.

However, as a result of the charterer's delay in seeking arbitration, if the court finds the owners and charterers solidarily liable as carriers, the owners may be forced to respond for the entire loss under their letter of undertaking, notwithstanding that the charterers may ultimately be held liable.

Granting the motion to stay will not relieve the charterers from this litigation. They will be a party to the proceeding to its conclusion as a third party plaintiff against T. Smith, the stevedore. If the stay is granted, some of the issues involved will be tried twice, once before the court, and again before the arbitrators; these include questions relating to the nature of the damage, its cause and monetary value. This multiplicity of litigation will necessarily be prejudicial to Superior.

Atlantic seeks to justify its eleven month delay in seeking a stay on the ground that Superior had not required Atlantic to file responsive pleadings. But this argument is based on the erroneous supposition that the Federal Rules are meaningless and that a party is not required to plead until its adversary threatens a default; it was Atlantic's duty to seek a stay before being driven to the wall.

In Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir. 1942, 126 F.2d 978, the defendant was held not in default within the meaning of Section 3 of the Arbitration Act, 9 U.S.C.A. § 3, and not to have waived its right to stay of the suit under Section 3 by a ten month delay in seeking it. But the issue of laches and the detriment inherent in the delay were not urged. Indeed, Judge Frank observed:

"But the situation is, ordinarily, different in the case of a defendant who amends his answer to set up the arbitration so as to ask a stay, especially where, as here, no important intervening steps had been taken in the suit and no one had been affected by the delay. In Radiator Specialty Co. v. Cannon Mills, Inc., 4 Cir., 97 F.2d 318, 117 A.L.R. 299, the defendant, when sued in the amount of $4,340 on a contract containing an arbitration clause, filed an answer and also set up a counterclaim of $58,812.60. The case was set for trial, but, after three months, the trial was, on defendant's motion, adjourned on the condition, imposed by the trial court, that the case would be tried on the adjourned date several months later. When the case was then called, both sides having prepared for trial, the defendant, for the first time, moved for a stay, under Section 3 of the Arbitration Act, of the action both on the claim and on its own counterclaim. It was held that the trial court had discretion to deny the stay because there had been a 'waiver' by defendant and he was in 'default.' There the defendant, because of his counterclaim, was in the position of a plaintiff who began suit without seeking arbitration until after a long interval; and the other facts are obviously different from those here." 126 F.2d at 989.

Counsel for Atlantic rely on Carcich v. Rederi A/B Nordie, 2 Cir. 1968, 389 F. 2d 692. But it is the doctrine of that case that we apply here. For,

"It is not 'inconsistency', but the presence or absence of prejudice which is determinative of the issue. As an abstract exercise in logic it may appear that it is inconsistent for a party to participate in a lawsuit for breach of a contract, and later to ask the court to stay that litigation pending arbitration. Yet the law is clear that such participation, standing alone, does not constitute a waiver, Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291, 293 (2d Cir. 1965) (filing complaint not waiver); Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F.2d 689 (4th Cir. 1956) (asserting counterclaim not waiver); Rootes Motors, Inc. v. SS Carina, 1964 A.M.C. 2754 (S.D.N.Y.

1964) (filing answer without mentioning arbitration not waiver), for there is an overriding federal policy favoring arbitration. Waiver, therefore, is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party, Kulukundis, supra, cannot carry the day."

Here there is not mere delay, but prejudice as well. The cross claim was filed in April 1969 and charterers' attorneys requested additional time to plead on April 29, 1969. However, charterers made no effort to stay litigation or to submit this matter to the pending arbitration at that time, but waited until that arbitration had been concluded and this matter was set for trial before raising the issue of a stay pending arbitration. A stay now would require a second submission to arbitration of an issue that could have been submitted and decided at the time of the first arbitration proceeding.

The court said in Radiator Specialty Company v. Cannon Mills, Inc., C.C.A. 4, 1938, 97 F.2d 318, 319, "Arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation."

It was never intended that these laws should be used as a means of furthering and extending delays. The policy of the U.S.Arbitration Act is to eliminate the expense and delay of extended court proceedings preliminary to litigation, Trafalgar Shipping Co. v. International Mill Co., 2d Cir. 1968, 401 F.2d 568. The Act was not intended to be used as an instrument to protract litigation or make it more expensive.

See Barber and Ross Company v. Cornell & Company, DDC 1965, 242 F. Supp. 825, affd. 123 U.S.App.D.C. 378, 360 F.2d 512 (1966).

While the charterparty permits arbitration to be demanded within 18 months, that time is not available at all events, come what may in the interim. There was a time—and there is still a condition, unfortunately, in many courts —in which litigants had perforce to expect a three or four year delay before a case could be reached for trial. But delay of justice is itself injustice. While a fair trial is not to be sacrificed at the altar of a fast one, litigants themselves owe a duty not to delay litigation unduly, nor to stretch out the proceeding to its utmost, as if it were merely a checker game in which each player awaits the maximum time before he next moves.

For these reasons the motion to stay is denied.