**MITSUI & CO. (USA), INC., Plaintiff,**

**v.**

**C&H REFINERY, INC., Pacific Refining Co., Coastal States Trading, Inc., CIC Industries, Inc., Coastal States Gas Corporation, Defendants.**

**No. C–78–2663–WAI.**

United States District Court, N. D. California.

April 10, 1980.

---

Lawrence A. Callaghan, Goldstein & Philips, San Francisco, Cal., Michael Brooks Carroll and Tony J. Tanke, Morrison & Foerster, San Francisco, Cal., James M.

Day, Cotten, Day & Doyle, Washington, D. C., for defendants.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

In its amended complaint, the plaintiff, Mitsui & Company (USA), Inc. ("Mitsui"), has alleged that one of the defendants, C&H Refinery, Inc. ("C&H"), contracted to buy crude oil at specified terms for a one-year period commencing July 1977.[1] It contends that defendant Coastal States[2] agreed to process the oil and, to perform other acts that would have enabled C&H to meet its obligations under the oil sale contract. Mitsui also alleges that the defendants agreed to perform similar obligations regarding one shipment in September 1977. It claims that the defendants breached each contract by failing to accept the September delivery.[3]

The defendants have moved to stay this action pending arbitration. For the reasons discussed below, the motion is granted, and all further proceedings are stayed pending arbitration.

*The Record*

The plaintiff filed suit on November 15, 1978. In January 1979, C&H moved for a more definite statement, and Coastal States moved to dismiss its parent corporations on jurisdictional grounds.[4] The parties resolved these matters by stipulation. As a result, Mitsui amended its complaint and dismissed the corporate parents without prejudice. In February 1979, C&H filed an answer and counterclaim, later amended, that made no mention of arbitration. Mitsui answered the amended counterclaim on May 21, 1979.

On that day, Coastal States moved for a stay pending arbitration. It relied on the oil sale contract, which provided that "[a]ny

---

1. Mitsui is a New York corporation; C&H, a Wyoming corporation. Delivery was to be made in Indonesia.

2. The Coastal States defendants are Pacific Refining Company and Coastal States Trading, Inc.

3. In alternate counts, Mitsui bases the same facts on theories of estoppel, interference with contract relations, and fraud.

4. The complaint had named Coastal States Gas Corporation and CIC Industries, Inc., as additional defendants.

controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration." *See* F.O.B. Oil Sales Agreement, General Conditions § 11.2.

Mitsui acknowledged the validity of the arbitration clause, but contended that Coastal States could not invoke a provision of a contract to which it was not party. Coastal States contended that it was entitled to the benefit of the arbitration clause because the complaint both incorporated the terms of the oil sale contract into an alleged agreement involving Coastal States and alleged that the defendants were agents of one another.

The parties argued the motion on August 3, 1979. At the hearing, C&H expressed its opposition to a stay, but informally reserved the right to alter this position, subject to giving Mitsui advance notice.

Following the hearing, Mitsui verified C&H's opposition to the stay and moved to "clarify" the allegations of its complaint. Both defendants opposed the motion: Coastal States argued that the plaintiff should be bound by its "admissions in the complaint," while C&H claimed undue burden in having to respond to an amended pleading. The Court granted Mitsui leave to amend on October 10, 1979.

Because the amended complaint[5] purported to separate the terms of the oil sale contract from those of the Coastal States contracts, the Court invited further briefing on the stay motion. Coastal States continued to insist that each of the plaintiff's theories of recovery implicated the arbitration right. In Mitsui's view, the amendments merely confirmed that its separate counts prevented Coastal States from invoking arbitration.

Prior to the hearing on December 21, 1979, C&H informed Mitsui that it would join Coastal States' motion to stay.

It is uncontroverted that C&H had a right to obtain a stay when Mitsui first filed suit. The plaintiff alleges that C&H is a party to the oil sale contract. The arbitration agreement embodied in that contract is governed by the United States Arbitration Act of 1925, 9 U.S.C. §§ 1–14 (1976) (the "Act").[6] Section 3 of the Act permits a defendant to obtain a stay pending arbitration.[7]

Mitsui argues that C&H has waived its right to obtain a stay by its conduct in this litigation. Acknowledging that the case is close, the Court must disagree with Mitsui.

*Discussion*

 The Court begins with the premise that "waiver is not favored and the facts must be viewed in light of the strong feder-

5. Prior to the filing of the amended complaint, C&H had moved to dismiss the action for Mitsui's alleged failure to join indispensable parties. The parties stipulated to the removal of this motion from calendar pending a ruling on the stay motion.

6. C&H relies on both the Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997, *reprinted foll.* 9 U.S.C.A. § 201 (West Supp.1979) (the "Convention"). Congress enacted the Convention as positive law with the addition of Chapter 2 of the Act. *See* 9 U.S.C.A. §§ 201–208 (West Supp.1979).

The Act governs all contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2, "among the several states or with foreign nations," *id.* § 1. The Convention applies to these § 2 agreements. 9 U.S.C.A. § 202.

The Court will treat the motion as one brought solely under § 3 of the Act. The parties have not briefed the import of the Conven-

tion in the waiver context. Because the Act accords to the defendants the relief sought, the Court does not consider whether a different analysis applies to Article II(3) of the Convention, which commands that a court "refer the parties to arbitration, unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." Convention art. II(3), *reprinted foll.* 9 U.S.C.A. § 201 (West Supp.1979).

7. Section 3 provides in relevant part:

If any suit . . . be brought in [federal court] upon any issue referrable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with arbitration.

9 U.S.C. § 3 (1976).

al policy supporting international arbitration agreements." *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*, 572 F.2d 1328, 1330 (9th Cir. 1978). In order to find a waiver, the Court "must be convinced not only that the [party seeking arbitration] acted inconsistently with that arbitration right, but that [the objecting party] was prejudiced by this action." *Id.*

The *Shinto Shipping* court affirmed a trial court's refusal to find waiver after examining the fairness of requiring the objecting party to arbitrate. The plaintiff, who had sued to compel arbitration, had taken three depositions for use in arbitration. This constituted a misuse of discovery because arbitration rules did not allow for compelled testimony. The defendant had participated in the depositions even though it knew they were improper. Just after the last session ended, the defendant contended that a waiver had occurred. The Ninth Circuit rejected this argument because the defendant failed to show prejudice from the limited discovery. Four factors demonstrated the lack of prejudice: (1) the defendant had not shown that the testimony would materially affect its case in arbitration; (2) it had been adequately represented at the sessions; (3) it had incurred "insignificant" expense; and, (4) it could have avoided the wrong, but instead schemed to avoid arbitration. *Id.* at 1330–31.

This holding makes clear that the objecting party bears the burden of demonstrating prejudice by a convincing showing based on the entire record.

Undoubtedly, C&H acted inconsistently with its arbitration right. In its answer, it contested the plaintiff's claims without alluding to that right. By its counterclaim, it sought judicial relief respecting arbitrable issues. It engaged in merits discovery. It filed motions raising matters unrelated to arbitration. It initially opposed a co-defendant's stay motion. Finally, it waited over one year from the filing of suit before seeking arbitration.

The sole issue[8] is whether the plaintiff has shown that it has been prejudiced by these acts.

Mitsui contends that it would have sought its remedy in arbitration had C&H requested a stay promptly. It argues that its burden is met with the showing that it both incurred avoidable expense and produced discovery materials[9] as a result of C&H's delay.

These factors are relevant in determining whether the litigation has reached a point where "it would be manifestly unfair to permit one side to resort to arbitration over the protest of the other." *Cavac Compania Anonima Venezolana de Administracion y Comercio v. Board*, 189 F.Supp. 205, 209 (S.D.N.Y.1960). However, they do not necessarily preclude a late stay. In terms of fairness to litigants, the question is whether the hardship to the objecting party outweighs the strong policy favoring arbitration.

If a party has not been substantially misled, his claim of prejudice lacks the force it might otherwise carry. When a defendant participates in litigation after communicat-

---

**8.** C&H suggests that the waiver issue should be submitted to arbitration with all others, but never attempts to explain the Ninth Circuit's express statement to the contrary. *See Martin Marietta Alum. Inc. v. General Elec. Co.*, 586 F.2d 143, 146 (9th Cir. 1978) ("Waiver is an issue to be determined by the court, based upon the facts and circumstances relied upon").

**9.** The parties conducted limited discovery. No depositions were taken. Coastal States neither conducted nor responded to discovery, taking the view that discovery should await the outcome of the stay motion. Mitsui and C&H each filed two sets of requests seeking documents and interrogatory answers from one an-

other. C&H responded to both Mitsui sets. Prior to the filing of the initial stay motion, Mitsui had produced over 2,500 documents and had furnished a few interrogatory answers in response to C&H's first requests. The parties have stipulated that Mitsui's response to the second C&H set will depend on whether the action is stayed. Neither party sought a protective order prior to furnishing discovery materials.

Mitsui seems to suggest that the defendants schemed to deny it legitimate discovery from Coastal States. The Court finds this to be highly speculative and cannot draw such a conclusion from the present record.

ing an intent to arbitrate in his answer, for example, "the burden is heavy on one who would prove waiver." *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir. 1968). *Accord, Martin Marietta Alum., Inc. v. General Elec. Co.*, 586 F.2d 143, 146 (9th Cir. 1978) (arbitration as a bar). Courts are more likely to enter a late stay if convinced that the objecting party could not have reasonably relied on his adversary's apparent election to litigate. In *Nuclear Installation Servs. Co. v. Nuclear Servs. Corp.*, 468 F. Supp. 1187 (E.D.Pa.1979), for instance, the defendant participated in litigation for one year after attempting promptly but unsuccessfully to assert its arbitration rights. The plaintiff argued that a waiver had occurred because it incurred expense in opposing a jurisdictional challenge brought by the defendant. The court disagreed, concluding that this expense could not justify a finding of waiver. *Id.* at 1194. Similarly, in *Shinto Shipping, supra*, the objecting party incurred expense by participating in improper discovery. In rejecting the claim of waiver, Judge Beeks emphasized that the "defendant cannot forthrightly claim surprise or unavoidable prejudice" when it recognized and participated in the misuse of discovery. This fact mitigated against the showing of "convincing evidence and clear equity" needed to support a waiver. *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*, 425 F.Supp. 1088, 1092 (N.D. Cal. 1976), *aff'd*, 572 F.2d 1328 (9th Cir. 1978).

Mitsui incurred expense by vigorously opposing Coastal States' stay motion. Aware that C&H had reserved its right to seek a stay, it made a tactical decision to strive to avoid arbitration and thereby assumed the risk that its effort would be rendered futile by C&H's change of mind. The Court agrees with the plaintiff that C&H could not have stood by justly as Mitsui committed itself irretrievably to the litigation. As a lawsuit progresses into later stages, a mere reservation of the right to arbitrate cannot prevent the objecting party from concluding reasonably at some point that the right has been abandoned. This is illustrated vividly in *Demsey & Assocs., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir. 1972), where the court held that it would be a "gross miscarriage of justice" to allow arbitration following a complex trial on the merits even though the arbitration right had been reserved in the pleadings.

The point of no return has not been reached here. Little of substance has occurred in this lawsuit. The pleadings have not been fully joined and little discovery has been conducted. No pretrial conference has been held; nor has the case been set for trial. Indeed, the major activity has centered about the stay question, and before that question was submitted for decision, C&H invoked its arbitration right. Within these limits, the plaintiff will not be prejudiced in having to proceed in arbitration.

The plaintiff argues that a contrary result is compelled by *Gulf Central Pipeline Co. v. Motor Vessel Lake Placid*, 315 F. Supp. 974 (E.D.La.1970), and *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211 (S.D.N.Y.1978). Neither case supports its position.

In *Gulf Central*, the stay applicant had waited almost a year before requesting arbitration. The court admonished that litigants "owe a duty not to delay litigation unduly, nor to stretch out the proceeding to its utmost, as if it were merely a checker game in which each player awaits the maximum time before he next moves." 315 F.Supp. at 977. Yet it did not find prejudice in the delay. The parties had arbitrated a related dispute before the stay was sought. The court found prejudice because a stay "would require a second submission to arbitration of an issue that could have been submitted and decided at the time of the first arbitration proceeding." *Id.* This case would be relevant only if Mitsui could demonstrate that similar waste would result from the entry of a stay order here.

Relying on *Pollux Marine*, Mitsui argues that its stay opposition has been wasted because C&H's delayed joinder "moots" that effort. In that case, a petitioner sought to compel arbitration in accordance with the terms of a charter party. The respondent contested both the charter party

and the arbitration clause. *See* 455 F.Supp. at 214 n.3. For nearly six months the respondent "refused to arbitrate and actively opposed the instant petition, through extensive discovery, briefings, affidavits and several court appearances." *Id.* at 214. Four days before the scheduled trial in which the court was to determine whether a charter party had been formed, the respondent "admitted" the existence of an arbitration agreement and filed an amended answer requesting that the charter party question be referred to arbitration. The court struck this pleading. Discussing the propriety of leave to amend, it found prejudice because the last minute reversal might have mooted the lively efforts of the parties in seeking a court determination of the charter party question. *Id.* at 216. The *Pollux Marine* holding surely mitigates against C&H's argument that the waiver issue should be referred to arbitration. The Court has rejected that argument, however, and is deciding the issue tendered to it by the parties.

As these cases reflect, courts must insure that duplication of effort in separate forums is minimized. If an objecting party can demonstrate concretely that such duplication would result from a belated attempt to obtain a stay, prejudice will likely be found. *E. g., Demsey, supra*, 461 F.2d at 1018 (arbitration sought after case fully tried); *American Locomotive v. Chemical Res. Corp.*, 171 F.2d 115, 118 (6th Cir. 1948) (stay sought after nearly eight years of protracted litigation), *cert. denied*, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949); *Radiator Specialty Co. v. Cannon Mills, Inc.*, 97 F.2d 318, 319 (4th Cir. 1938) (stay sought on day of trial). Mitsui has not made such a showing.

Nor has the plaintiff shown that it will suffer concrete harm in the arbitration forum as a result of the litigation activity. It argues that the defendants have gained an unwarranted advantage through discovery, but does not show how the documents it produced will impair its case in arbitration. *See Shinto Shipping, supra*, 572 F.2d at 1330. It has not shown, moreover, that these materials would have been unavailable to defendants through the arbitration process. If discovery had been substantial, the Court might presume that prejudice exists. *See Liggett & Myers, Inc. v. Bloomfield*, 380 F.Supp. 1044, 1047–48 (S.D.N.Y. 1974) (thousands of pages of deposition testimony and hundreds of documents). But the Court cannot base such a presumption on the limited discovery that has occurred to date. If the discovery record is sparse, an objecting party must show specifically how its case has been impaired. Absent such a showing, the strong policy favoring arbitration controls.

The law is clear that waiver "is not to be lightly inferred." *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968). *See Hilti, Inc., supra*, 392 F.2d at 372 n.9 ("The cases demonstrate with marked consistency the reluctance of courts to find default despite substantial delay and intervening proceedings.").

Mitsui has not made the convincing showing needed to sustain its burden. At best, the record permits an inference of prejudice to be drawn. Prejudice cannot be shown by inference alone. Examining the facts in light of the strong policy favoring arbitration, the Court must resolve all doubts against the objecting party. The Court concludes, therefore, that Mitsui can proceed in arbitration at this time without prejudice to its case. C&H has not waived its right to obtain a stay.

Accordingly, this action is stayed pending arbitration in accordance with the oil sale contract.