[No. B012889. Second Dist., Div. Three. Mar. 10, 1986.]

ADORA K. CHAN, Plaintiff and Respondent, v.
DREXEL BURNHAM LAMBERT, INCORPORATED, et al.,
Defendants and Appellants.

634

**COUNSEL**

Keesal, Young & Logan and Geraldine Darrow for Defendants and Appellants.

Smith & Holland, Malcolm George Smith and Lesley M. Vaughn for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendants and appellants Drexel Burnham Lambert Incorporated (DBL) and Robert B. Zusman (Zusman) appeal from the denial of their petition to compel arbitration and motion for an order staying proceedings pending arbitration of their controversy with plaintiff and respondent Adora K. Chan (Chan).

Because the arbitration clause was not incorporated by reference into Chan's application form, the order is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Chan was employed as a stockbroker by DBL, a securities brokerage firm, of which Zusman is an executive. As a condition of her continued employment with DBL, Zusman's secretary asked Chan to sign a form concerning her registration as a securities broker.[2]

On March 11, 1980, Chan executed a four-page document entitled uniform application for securities and commodities industry representative and/

---

[1] The facts and procedure are gleaned from the pleadings and the court records on appeal.

[2] The record on appeal has been augmented with the superior court file pursuant to California Rules of Court, rule 12(a).

or agent (U-4). The U-4 is the document relied on by DBL as the agreement between it and Chan providing for arbitration. Line 9 of page 1 of the U-4 indicated applicant Chan was to be registered with the National Association of Securities Dealers (NASD), the American Stock Exchange (AMEX) and the New York Stock Exchange (NYSE). Paragraph 2C of page 4 of the U-4 states: "I agree to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application; . . ."

One of the organizations to which Chan submitted the application was the NYSE. The NYSE has a rule (Rule 347) which provides: "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules."

Chan was terminated from her position with DBL, and on May 18, 1984, she filed a complaint alleging, inter alia, wrongful discharge from employment. On October 26, 1984, DBL and Zusman petitioned to compel arbitration and moved for an order staying proceedings pending arbitration, which actions were opposed by Chan.

In a November 29, 1984 minute order, the trial court ruled there was no evidence before it as to the "terms" of the alleged agreement relied on by DBL, and that paragraph 2C thereof referred to statutes, constitutions, rules and bylaws not before the court. It noted Chan's position was she never agreed to arbitrate and did not understand paragraph 2C to obligate her to do so. The trial court thereby ordered both sides to present evidentiary positions.

Pursuant to the minute order, both sides filed additional briefs with the trial court, including declarations by Chan and Zusman. Thereafter, the matter came on for hearing, was argued and submitted.

In a minute order dated February 20, 1985, the trial court denied DBL's petition and ruled, inter alia: "1. The agreement signed by [Chan] does not expressly provide for arbitration. [Therefore] there was no openly and fairly entered into agreement for arbitration. [Citations.] [¶] 2. The provision relied upon by defendants as requiring arbitration may reasonably be construed as applying to brokerage disputes and not to employer-employee mat-

ters. [¶] 3. The contract is one of adhesion and the ambiguities contained therein . . . should be resolved against defendants. [Citation.]"

## CONTENTIONS

DBL and Zusman contend Chan entered into a valid agreement which requires this controversy to be arbitrated, and that federal law preempts contrary California law where parties agree to arbitrate.

Chan counters that the alleged agreement did not contain an arbitration provision, is reasonably construed to apply only to brokerage disputes, and is one of adhesion with ambiguities to be resolved in her favor. She further avers that her right to select a judicial forum is a substantial one and cannot be compromised, and that California law governs this dispute.

## DISCUSSION

■ It is now well established that state adhesion contract principles are inapplicable to the enforcement of arbitration clauses in an agreement governed by the Federal Arbitration Act (Act). (9 U.S.C. § 1 et seq.)

■ Acceptance of this concept means scrutiny and analysis of any such agreement pursuant to principles of California law is disallowed.

However, the *formation* of a valid agreement to arbitrate requires the application of California general contract law. Therefore, our discussion covers all these issues, and we conclude no agreement to arbitrate was entered into by the parties.

1. *Liberal federal policy favoring arbitration controls, if applicable.*

■ Section 2 of the Act provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., of an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . ., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

■ "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 785, 103 S.Ct. 927].) "In enacting § 2 of the federal Act, Congress declared a national

policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *(Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 10 [79 L.Ed.2d 1, 12, 104 S.Ct. 852].)

There are "only two limitations on the enforceability of arbitration provisions governed by the . . . Act: they must be part of a . . . contract 'evidencing a transaction involving commerce' [fn. omitted] and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.' [There is] nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *(Id.,* at pp. 10-11 [79 L.Ed.2d at p. 12].)

a. *Application throughout the states.*

"The majority of state courts considering the preemption issue have held the Act controls the enforceability of arbitration clauses in contracts involving commerce which are litigated in state courts. (See, e.g., *Blanks* v. *Midstate Constructors, Inc.* (Tex.Civ.App. 1980) 610 S.W.2d 220, 223; *Garmo* v. *Dean, Witter, Reynolds, Inc.* (1984) 101 Wn.2d 585 [681 P.2d 253, 254-255]; *Episcopal Housing Corp.* v. *Federal Ins. Co.* (1977) 269 S.C. 631 [239 S.E.2d 647, 650].) In *Ex parte Alabama Oxygen Co., Inc.* (Ala. 1983) 433 So.2d 1158, the Supreme Court of Alabama determined that the Act did not preempt state policies regarding arbitration. However, the opinion was vacated by the United States Supreme Court and the case remanded for reconsideration in light of *Southland Corporation* v. *Keating, supra,* 465 U.S. 1. *(York International* v. *Alabama Oxygen Co., Inc.* (1984) 465 U.S. 1016 [79 L.Ed.2d 668, 104 S.Ct. 1260].) On remand, the Alabama court held federal law controlled. *(Ex parte Alabama Oxygen Co., Inc.* (Ala. 1984) 452 So.2d 860.)" *(Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1148 [219 Cal.Rptr. 616].)

b. *California adhesion principles inapplicable.*

 In recognition of the above discussion, California adhesion contract principles may not be applied here. Chan's employment dealt with "commerce," and therefore a binding arbitration agreement would be controlled by the Act. Further, "disputes between a member of a national stock exchange and its employee are consistently held to be arbitrable, . . ." *(Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at p. 1148; see e.g. *Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey* (8th Cir. 1984) 726 F.2d 1286, 1288; *Dickstein* v. *duPont* (1st Cir. 1971) 443 F.2d 783, 784-785; *Merrill Lynch, Pierce, Fenner & Smith* v. *Shubert* (M.D.Fla. 1983) 577 F.Supp.

406-407; *Legg, Mason & Company, Inc.* v. *Mackall & Coe, Inc.* (D.D.C. 1972) 351 F.Supp. 1367, 1369.)

The case of *Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at page 1144, involved a fact situation similar to the case at bench. A securities brokerage firm appealed from the denial of its motion to stay proceedings and compel arbitration of a dispute arising out of the plaintiff stockbroker's employment. After reviewing decisions of state courts that have considered the preemption issue, the *Tonetti* court held "[t]he overwhelming weight of authority compels us to conclude California adhesion contract principles are inapplicable to the enforcement of an arbitration clause in a contract governed by the Act." (*Id.,* at p. 1148.)

█ It follows also then that ambiguities in an arbitration clause are to be resolved in favor of arbitration, notwithstanding the California rule that a contract is construed most strongly against the drafter (*Marshall & Co.* v. *Weisel* (1966) 242 Cal.App.2d 191, 196 [51 Cal.Rptr. 183]). █ "The . . . Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. at pp. 24-25 [74 L.Ed.2d at p. 785].)

█ Likewise, an agreement need not *expressly* provide for arbitration, but may do so in a secondary document which is incorporated by reference, even pursuant to California law. In *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 353 [175 Cal.Rptr. 226], the appellant realtors contracted to abide by the bylaws of a local real estate board, one of which bylaws imposed a duty to arbitrate as set forth in the California Association of Realtors Arbitration Manual. The appellants were held bound to arbitrate, as the arbitration manual was incorporated into the contract by reference, and was thus part of the contract as though cited verbatim. (*Id.,* at p. 357.)

2. *The Act does not apply until an agreement to arbitrate is established.*

a. *Federal law allows for state contract law defenses.*

Deference to the Act does not settle the issue of whether Chan *agreed* to be bound by Rule 347, so as to make that provision a part of the contract. █ While federal law is applied in construing arbitration clauses and determining the scope of such clauses (*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. at pp. 24-25 [74 L.Ed.2d at pp. 785-786]), the issue here is not the scope or construction of the clause, as the clause

plainly covers disputes arising out of termination of employment. Rather, the threshold question is whether there was *any* agreement as to arbitration.

"Arbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so." (*Vespe Contracting Co.* v. *Anvan Corporation* (E.D.Pa. 1975) 399 F.Supp. 516, 520.) The Act " 'does not dictate that we should disregard parties' contractual agreements . . . outlining the boundaries of the areas intended to be arbitrable' " (*PAS-EBS* v. *Group Health, Inc.* (S.D.N.Y. 1977) 442 F.Supp. 937, 940), and there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate. (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345].)

The United States Supreme Court has recognized that the portion of the Act which permits a party to nullify an agreement to arbitrate on " ' 'such grounds as exist at law or in equity for the revocation of any contract' ' " allows a party to raise *general contract law defenses* to avoid enforcement of an arbitration agreement. (*Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 16, fn. 11 [79 L.Ed.2d at p. 16].)

The *existence* of a valid agreement to arbitrate involves general contract principles, and state law governs disposition of that question. (*Fairfield-Noble Corp.* v. *Pressman-Gutman Co.* (S.D.N.Y. 1979) 475 F.Supp. 899, 902, fn. 2 [unilateral insertion of arbitration clause constituted a material alteration of contract]; *Duplan Corp., etc.* v. *W. B. Davis Hosiery Mills* (S.D.N.Y. 1977) 442 F.Supp. 86, 88 [similar fact situation].) "*By its terms, [the Act] does not apply until the arbitration clause in question is determined to be part of the contract.* [The Act] dictates the effect of a contractually agreed-upon arbitration provision, but it does not displace state law on the general principles governing formation of the contract itself." (*Supak & Sons Mfg. Co., Inc.* v. *Pervel Industries, Inc.* (4th Cir. 1979) 593 F.2d 135, 137, italics added; accord *Coastal Industries* v. *Automatic Steam Products* (5th Cir. 1981) 654 F.2d 375, 377-378; *Universal Plumbing* v. *John C. Grimberg Co., Inc.* (W.D.Pa. 1984) 596 F.Supp. 1383, 1385.)[3]

---

[3]As set forth *ante,* federal trial and appellate courts in at least four circuits (S.D.N.Y.-2d, W.D.Pa.-3d, 4th and 5th) have recognized the applicability of *state* law in determining whether an arbitration clause is part of a contract. However, in *Avila Group, Inc.* v. *Norma J. of California* (S.D.N.Y. 1977) 426 F.Supp. 537, 540, the court held " '[f]ederal law, comprising generally accepted principles of contract law' " was applicable in determining whether a party was bound by an arbitration provision. Notwithstanding that ruling, ten months later, a different judge in the same district stated, in response to a contention that "federal common law" applied: "[Respondents] have not pointed to any—and we know of no such—federal law of contracts. For general principles of contract law, federal courts rely on state law." (*Farkar Co.* v. *R. A. Hanson DISC., Ltd.* (S.D.N.Y. 1977) 441 F.Supp. 841, 845, mod. (2d Cir. 1978) 583 F.2d 68.)

We therefore apply California contract law principles in determining whether Rule 347 was an enforceable provision of the contract.

b. *Under California law, Rule 347 was not incorporated by reference.*

■ "As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence." (*King* v. *Larsen Realty, Inc., supra,* 121 Cal.App.3d at p. 358.) Further, "[a] contract may validly include the provisions of a document not physically a part of the basic contract. . . . 'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] *But each case must turn on its facts.* [Citation.] *For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.'*" (*Williams Constr. Co.* v. *Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454 [61 Cal.Rptr. 912], italics added; accord *King* v. *Larsen Realty, Inc., supra,* 121 Cal.App.3d at p. 357.)

In *King,* arbitration provisions were determined to be incorporated into a contract, where: (1) appellant Larsen, upon applying for membership in a local real estate board, had read the bylaws requiring arbitration; (2) appellant Doty had read his application prior to signing it, which application required the applicant to abide by all bylaws, and Doty enjoyed familiarity with the arbitration manual, having referred thereto on occasion; and (3) the arbitration manual was readily available to both appellants. (*Id.,* at pp. 353, 357.)

The instant case is factually distinguishable from each of the cases cited by DBL and Zusman. In those cases, the arbitration provision either appeared on the face of the document,[4] or, was *properly* incorporated by

---

[4](See, e.g., *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 149 [175 Cal.Rptr. 851], cert. den. (1982) 456 U.S. 919 [72 L.Ed.2d 168, 102 S.Ct. 1760]; *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 813, fn. 2 [171 Cal.Rptr. 604, 623 P.2d 165]; *Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145, 146 [21 L.Ed.2d 301, 303, 89 S.Ct. 337] rehg. den. (1969) 393 U.S. 1112 [21 L.Ed.2d 812, 89 S.Ct. 848]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. at pp. 4-5 [74 L.Ed.2d at pp. 772-773]; *Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 4 [79 L.Ed.2d at p. 8]; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 671 [97 Cal.Rptr. 811]; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 23 [136 Cal.Rptr. 378]; *Merrill Lynch, Pierce, Fenner & Smith* v. *Thomson* (E.D.Mo. 1983) 574 F.Supp. 1472, 1474; *Cullen* v. *Paine, Webber, Jackson & Curtis, Inc.* (N.D.Ga. 1984) 587 F.Supp.

reference. Where the arbitration provision was not set forth on the face of the contract, the contract clearly referred to and identified the incorporated document wherein the arbitration clause appeared.

In *O'Neei* v. *National Ass'n of Securities Dealers* (9th Cir. 1982) 667 F.2d 804, 806, when plaintiff applied for NASD registration, he *attested* he was familiar with "the *By-Laws, the Rules of Fair Practice, and the Code of Procedure for Handling Trade Practice Complaints* of the [*NASD*]." (Italics added.) Similarly, in *Muh* v. *Newberger, Loeb & Co., Inc.* (9th Cir. 1976) 540 F.2d 970, 972, plaintiff agreed "to be governed by the *Constitution and Rules of the Board of Governors of the [NYSE].*" (Italics added.) Likewise, in *Coenen* v. *R. W. Pressprich & Co.* (2d Cir. 1972) 453 F.2d 1209, 1211-1212, certiorari denied 406 U.S. 949 [32 L.Ed.2d 337, 92 S.Ct. 2045], the plaintiff signed a pledge to "'abide by the *Constitution [of the [NYSE]]* . . . .'" (Internal bracket ours; italics added.) In *Bear* v. *Hayden, Stone, Incorporated* (9th Cir. 1975) 526 F.2d 734, 735, the court stated "[a]s members of the *[NYSE]*, both parties had sworn to be bound by its *constitution*, . . ." (Italics added.) In *Tullis* v. *Kohlmeyer & Co.* (5th Cir. 1977) 551 F.2d 632, 633, plaintiffs executed applications to the NYSE "in which they stated that they had read the *Constitution and Rules of the [NYSE]*, and pledged to abide by them." (Italics added.) In *Coudert* v. *Paine, Webber, Jackson & Curtis* (2d Cir. 1983) 705 F.2d 78, 80, while the precise terms of the contract are not set forth in the opinion, the court held "the [NYSE] letter [to the appellant] approving [appellant] for employment . . . incorporate[d] the rules of the [NYSE] by reference . . . ."

And finally, in *King* v. *Larsen Realty, Inc., supra,* 121 Cal.App.3d at page 353, the application required the appellants to abide by the clearly identifiable "*bylaws of the Paso Robles Board of Realtors.*" (Italics added.)

■ The interpretation of a written instrument is solely a judicial function unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Because extrinsic evidence would be unavailing as to whether the reference in the alleged agreement to the crucial NYSE rules is on its face clear and unequivocal, we make an independent determination. (*Id.*, at p. 866.)

1520, 1521; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 704 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Metro Industrial Painting Corp.* v. *Terminal Const. Co.* (2d Cir. 1961) 287 F.2d 382, 383, cert. den. 368 U.S. 817 [7 L.Ed.2d 24, 82 S.Ct. 31]; *Rust* v. *Drexel Firestone Inc.* (S.D.N.Y. 1972) 352 F.Supp. 715, 716; *Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at p. 1146 (this court took judicial notice of the record on appeal in that case); *Kelleher* v. *Reich* (S.D.N.Y. 1982) 532 F.Supp. 845, 848.)

■ The language in paragraph 2C of the U-4 application set forth only that Chan agreed to abide "by the Statute(s), Constitution(s), Rules and By-laws" and any amendments of the three organizations to which Chan's application was to be submitted. Arbitration is nowhere mentioned in paragraph 2C. One of the organizations to which Chan submitted the application was the NYSE, which promulgated Rule 347, the rule requiring arbitration. However, even assuming paragraph 2C referred specifically to the NYSE, the reader would thereafter be required to seek out Rule 347 thereof to locate the arbitration clause.

■ Another troubling aspect of this case is the recognition that "the right to select a judicial forum, vis-à-vis arbitration, is a ' "substantial right," ' not lightly to be deemed waived. (See *Wilko* v. *Swan* (1953) 346 U.S. 427, 438 [98 L.Ed. 168, 177, 74 S.Ct. 182]; *Boyd* v. *Grand Trunk W. R. Co.* (1949) 338 U.S. 263, 266 [94 L.Ed. 55, 58, 70 S.Ct. 26].)" (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* supra, 67 Cal.App.3d at p. 31.) The United States Supreme Court in *State Farm Fire & Cas. Co.* v. *Tashire* (1967) 386 U.S. 523, 536 [18 L.Ed.2d 270, 278, 87 S.Ct. 1199] reiterated that "substantial rights [include] the right to choose the forum in which to establish [one's] claims, subject to generally applicable rules of jurisdiction, venue, service of process, removal, and change of venue."

*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122 [211 Cal.Rptr. 62], involved a contract which provided for an arbitration procedure in the event the parties subsequently *agreed* to arbitrate. In construing the contract, the *Titan* court was guided by the rule that contractual arbitration is a favored method of resolving disputes and recognized that every intendment should be indulged toward that end. (*Id.,* at p. 1127.) However, the *Titan* court also was mindful that the constitutional right to a jury trial is basic and fundamental, and held therefore, in case of doubt, the issue of contract interpretation should be resolved in favor of preserving that right. (*Id.,* at pp. 1127-1128.)

■ Reviewing this case at least with the recognition of this substantial right, we hold as a matter of law that the U-4 form, the alleged agreement, failed to *clearly* and *unequivocally* refer to the incorporated document. Unlike in the cases discussed *ante,* the reference did not identify any document or source by title. The reference was amorphous, and did not guide the reader to the incorporated document.

The rules of an organization may be found in a plethora of sources, including its constitution, statutes, bylaws, manuals, and memoranda. The constitution alone of the NYSE "is a formidable document of some 70

pages." (*Hope* v. *Superior Court, supra,* 122 Cal.App.3d at p. 150.) One who reads paragraph 2C would not even know which body of rules to consult to find the elusive arbitration language.

■ While federal law requires us to construe ambiguities *within the arbitration clause* in favor of arbitration, that does not prevent us from construing ambiguities *in the incorporating document,* here the U-4 form, against the drafter. *Williams Constr. Co.* v. *Standard-Pacific Corp., supra,* 254 Cal.App.2d at page 454, requires the incorporating document to refer to the incorporated document with particularity. That was not the case here—the reference did not clearly and equivocally draw Chan's attention to "The New York Stock Exchange Guide—Rules of Board—Offices and Employees," which is where Rule 347 appears.

In addition to the reference being clear and unequivocal, *Williams Constr. Co.* v. *Standard-Pacific Corp., supra,* 254 Cal.App.2d at page 454, requires the terms of the incorporated document be known or easily available to the party to be bound.[5]

While there is an open question as to whether Rule 347 was *readily available* to Chan, in light of our holding that the U-4 form did not, as a matter of law, adequately refer to the rule, it is unnecessary to remand for a finding on the question of availability; even if Rule 347 were available, because the

---

[5]The record indicates that Chan lacked *actual knowledge* of Rule 347. When the trial court called for the parties to present their evidentiary positions, Chan and Zusman each filed declarations.

In her declaration, Chan stated, inter alia, that: (1) at no time prior to or during her employment by DBL did she know of any requirement to submit employer/employee disputes to arbitration; (2) neither Zusman, nor any other representative of DBL ever explained to her that such disputes were to be submitted to arbitration; (3) no one ever instructed her to read a NYSE rule regarding arbitration; (4) prior to the instant matter she had no knowledge of such a rule; (5) she had never been previously involved in an employer/employee dispute; (6) she had never known of an employer/employee dispute in the securities industry which had been submitted to arbitration; and (7) not only did the U-4 not refer to arbitration, but it provided that in the event of a dispute, proceedings "would be commenced in a 'court of competent jurisdiction and proper venue,' . . ." so that it was her reasonable expectation that a dispute would not be a matter for arbitration.

Zusman's declaration, did not contend Chan had knowledge of Rule 347. The declaration did state every U-4 Zusman had seen in his 29 years in the securities industry *contained either a clause in which the applicant explicitly agreed to arbitrate* employer/employee disputes, or, a clause wherein the applicant agreed to abide by all rules and bylaws of the bodies with which the applicant was to be registered. Zusman recognized that Chan's U-4 contained a clause of the *latter type.*

Separately, we note the first page of Chan's U-4 is signed by one David Meadow (Meadow) who attests at line 12 that "[t]o the best of [his] knowledge and belief the applicant at the time of approval will be familiar with the statute(s), constitution(s) and rules . . . [of the] organization with which this application is being filed, . . ." While we do not speculate on the reasons for DBL's omission of a declaration by Meadow to that effect, such evidence is conspicuous by its absence.

U-4 did not clearly refer to it, Chan was not put on notice of the rule so that it did not become part of the alleged agreement.

### CONCLUSION

Arbitration is highly favored in the law; however, no policy compels arbitration of disputes where arbitration was not agreed to by the parties.

Federal law governs the construction and scope of agreements to arbitrate contracts or transactions within the coverage of the Act; California law determines whether the arbitration clause is part of the contract. The right to a judicial forum is a substantial right, and for an arbitration provision to be incorporated into a contract by reference, the reference must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties.

■ While the trial court's basis for denying the petition to compel was erroneous, the error was harmless, as there were proper independent grounds for denying arbitration.[6]

### DISPOSITION

The order denying arbitration is affirmed.

Danielson, J., and Arabian, J., concurred.

A petition for a rehearing was denied April 9, 1986.

---

[6] "'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.'" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)