ON APPLICATION FOR REHEARING
MADDOX, Justice.
On January 20, 1987, the petition for mandamus was denied, without opinion. See 514 So.2d 350 (Ala.1987). The petitioner has filed an application for rehearing.
This petition for writ of mandamus involves a question of whether a dispute was subject to arbitration under the provisions of the Federal Arbitration Act. In order to answer that question, we must determine whether there was a valid enforceable arbitration agreement that applied to the dispute, and whether the party moving for arbitration had waived its right to have the controversy arbitrated because it had substantially invoked the judicial process.
FACTS
On January 4, 1984, Robert and Karen Lane commenced a lawsuit in the Circuit Court of Mobile County captioned Robert Lane and Karen Lane v. E.F. Hutton & Company, Inc. and Wallace R. McKinney IV, No. CV-84-000018. The Lanes alleged that, in reliance upon misrepresentations made to them by Hutton and McKinney, who acted as the Lanes’ account executive, they purchased a single premium deferred annuity (SPDA) policy issued by an insurance company that subsequently experienced financial difficulties, and that because of the fraud practiced upon them by the defendants they were damaged substantially.
On May 2,1984, McKinney, the petitioner here, answered the Lane complaint and cross-claimed against Hutton, alleging that (1) if he made any misrepresentations to the Lanes, such misrepresentations were based upon information provided to him by Hutton, and (2) the Lane lawsuit had caused him mental anguish and had caused damage to his reputation. Hutton answered the Lane complaint and McKinney’s cross-claim on September 24, 1984, and filed a cross-claim against McKinney in which it alleged that, if McKinney made any misrepresentations to the Lanes concerning their SPDA policy, he acted beyond the scope of his employment with Hutton and should be held liable to Hutton for indemnity if Hutton were found liable to the Lanes.
The Lanes’ suit is one of several cases filed against Hutton and Hutton employees in the Circuit Court of Mobile County, arising out of Hutton’s marketing of the SPDA involved in the Lane suit. It is one of several in which this petitioner, McKinney, is, and was, named as a defendant along with his employer, Hutton. The lawsuit filed by the Lanes against Hutton and McKinney was the first lawsuit to be filed, however.
Because there were approximately 50 of these lawsuits filed against Hutton and employees of Hutton, such as McKinney, the then-presiding judge of the Circuit Court of Mobile County, the Honorable *695 Robert E. Hodnette, Jr., entered an order consolidating all of the cases for the purpose of discovery, and designated Robert T. Cunningham, Jr., counsel for the Lanes, as chief counsel in charge of all “general” discovery for all plaintiffs in all of the cases and, until his retirement, Judge Hodnette handled all discovery motions, pleadings, other motions, etc., in all of the cases.
After the filing of the lawsuit by the Lanes, and the entry of the consolidation order, there were approximately 115 depositions taken by the parties.
Hutton took McKinney’s pre-trial deposition on five occasions (September 27, 1984; May 14, 1985; May 15, 1985; April 28, 1986, and May 8, 1986). Hutton also propounded two sets of interrogatories, and Hutton filed several motions in the court in connection with the pending claims.
Just prior to May 19, 1986, the day on which the case was to be tried in the Circuit Court of Mobile County, Hutton entered into a settlement agreement with the Lanes, which resulted in the dismissal of the Lanes’ case against Hutton and McKinney.
There remained, however, the cross-claims of McKinney against Hutton, and Hutton against McKinney, and a conference was then held in the chambers of Judge Douglas I. Johnstone, to whom the case had been reassigned, with regard to the rescheduling of the trial of the issues embraced in those cross-claims.
The cross-claim of McKinney against Hutton in the Lane lawsuit was then scheduled for trial on September 22, 1986. Hutton dismissed its cross-claim against McKinney on September 8, 1986, and on the next day, September 9,1986, which was over two years after the date McKinney had filed his cross-claim against it, Hutton moved for an order compelling arbitration and a stay of the proceedings pending arbitration, contending that the case between it and McKinney became arbitrable for the first time when the settlement was reached by and between Hutton and the Lanes. The motion was supported by documents containing what Hutton contended, and contends in its response to this petition, is a valid arbitration agreement by and between McKinney and it.
On September 12, 1986, after receiving extensive briefing on Hutton’s motion to compel arbitration and after entertaining oral argument on the motion on September 5 and 11, 1986, Judge Johnstone held that McKinney’s claims against Hutton must be stayed pending arbitration. He entered the following order:
“The motion of E.P. Hutton & Company, Inc. (‘Hutton’) to compel arbitration and to stay the case pending arbitration having come on for hearing before the court on September 11, 1986, and the parties having appeared by their counsel of record, and the court having fully considered the legal briefs, the evidence and the arguments of counsel and finding that said motion is well founded, that the parties have agreed to arbitrate and that there has been no waiver by Hutton, grants said motion, orders arbitration to be held and further orders that this action and all issues raised therein be stayed pending said arbitration.”
On September 25,1986, McKinney moved for reconsideration of Judge Johnstone’s September 12, 1986, order compelling arbitration. After receiving additional briefing and hearing further oral argument on October 24, 1986, Judge Johnstone denied McKinney’s motion for reconsideration in a written order dated November 10,1986. In that order, Judge Johnstone, being advised by McKinney’s counsel that he would seek a writ of mandamus from this Court, did stay his order to compel arbitration until this Court acted on the mandamus petition.
On December 8, 1986, McKinney petitioned this Court for a writ of mandamus to Judge Johnstone. Upon receipt of McKinney’s petition and Hutton’s letter response dated December 17,1986, this Court denied McKinney’s petition on January 20, 1987.
Dissatisfied with this Court’s decision, McKinney petitioned the Court on February 3, 1987, for a rehearing on his petition for a writ of mandamus. A majority of this Court set aside its January 20, 1987, *696 order denying McKinney’s petition for a writ of mandamus, and directed Hutton to respond to McKinney’s petition.
The matter was presented orally before the Court, and is now ripe for resolution.
SCOPE OF REVIEW
First, we address our scope of review. This is a mandamus petition, and this Court has said many times that “[mjandamus is an extraordinary remedy, which should be granted only when there is a clear showing that the trial court abused its discretion.” Ex parte Lang, 500 So.2d 3, 5 (Ala.1986). See, also, Ex parte Hartford Ins. Co., 394 So.2d 933, 936 (Ala.1981), wherein this Court stated that “[mjanda-mus itself is an extraordinary remedy which should only be granted when there is a clear showing that the trial court abused its discretion and exercised it in an arbitrary or capricious manner.”
We have examined the record and related material forwarded to this Court by McKinney and Hutton and we are of the opinion that Judge Johnstone very carefully considered and analyzed the issues presented on Hutton’s motion to compel arbitration, and that he held three separate hearings at which oral arguments were presented by McKinney and Hutton concerning each of the matters raised in the petition for mandamus. The record shows that Judge Johnstone reviewed the briefs and affidavits submitted by the parties and questioned counsel on all relevant issues, and that only then did he issue a written order holding that McKinney is obligated under the controlling arbitration agreements to submit his claims to arbitration.
Judge Johnstone allowed McKinney a final opportunity to present arguments in opposition to Hutton’s motion to compel arbitration on October 24, 1986, in connection with McKinney’s motion for reconsideration. Upon further consideration of the issues, and despite having been made aware of McKinney’s intention to seek a writ of mandamus if the circuit court ruled against him, Judge Johnstone again concluded, in a written order dated November 10, 1986, that arbitration was mandated.
Based on this record, we cannot conclude that Judge Johnstone abused his discretion or exercised it in an arbitrary or capricious manner. Quite to the contrary, the record reflects that Judge Johnstone gave due consideration to the arguments of both sides; therefore, the writ is not due to be granted on the proposition that the trial judge did not adequately consider the matter.
Hutton contends that in view of the fact that Judge Johnstone did give due consideration to the matter before him, this Court should deny McKinney’s petition without reaching the merits of the arbitration issue. This we decline to do.
The question of whether McKinney agreed to arbitrate this particular dispute between him and Hutton is a substantial one, and if we hold that the parties did agree to arbitrate, there is a more substantial question whether Hutton waived its right to compel arbitration.
OPINION
I
The first question we consider is whether McKinney agreed to submit the dispute between him and Hutton to arbitration. McKinney contends that he did not. We disagree. We find substantial evidence to support the finding of the trial judge that there was a valid, binding arbitration agreement between McKinney and Hutton. McKinney signed at least three agreements upon which the trial court could have found him obligated to arbitrate this dispute between him and Hutton.
On October 10, 1980, McKinney executed a New York Stock Exchange agreement (“Form 4-80”), pursuant to paragraph (d) of which he agreed to the following dispute-resolution procedure:
“Any controversy between me and any member or member organization arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution *697 and Rules then obtaining of the [New York Stock] Exchange.” (Emphasis added.) (Hutton Appendix, Exhibit G.)
On October 10, 1980, McKinney also executed an American Stock Exchange agreement in which he expressly agreed to be bound by the arbitration provisions contained in the respective Rules and Constitutions of the American Stock Exchange and the New York Stock Exchange:
“I agree that any controversy between me and any member or member organization of the American Stock Exchange, Inc. arising out of my employment or the termination of my employment by and with such member or member organization or any successor thereto shall be settled by arbitration at the instance of any such party in accordance with the Constitution and Rules then obtaining of the American Stock Exchange, Inc. or, if the employer be a member or member organization of the New York Stock Exchange, Inc., in accordance with the Constitution and Rules of that Exchange.” (Emphasis added.) (Hutton Appendix, Exhibit H.)
Finally, on April 27,1981, McKinney executed a “uniform Application for Securities Industry Registration” (“Form U-4”), pursuant to paragraph 5 of which he agreed “to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register.” (Emphasis added.) (Hutton Appendix, Exhibit I.)
In all three of the above-quoted agreements, which Judge Johnstone had before him on Hutton’s motion to compel arbitration, McKinney agreed to comply with and be bound by the constitution and rules of the New York Stock Exchange and to submit to its jurisdiction. Article XI, Section 1, of the New York Stock Exchange constitution provides:
“Any controversy between parties who are members, allied members or member organizations and any controversy between a member, allied member and member organization and any other person arising out of the business of such member, allied member or member organization, or the dissolution of a member organization shall at the instance of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt.”
Similarly, Rule 347 of the New York Stock Exchange specifically provides for arbitration of disputes arising out of employment or the termination of employment:
“Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.”
It is not disputed that all of the claims advanced by McKinney against Hutton arise out of the course of his employment with Hutton; therefore, we hold that the trial court did not abuse its discretion in holding that the claims must be arbitrated in accordance with his arbitration agreements and the rules of the New York Stock Exchange.
McKinney relies upon a California case, Chan v. Drexel Burnham Lambert, Inc., 178 Cal.App.3d 632, 223 Cal.Rptr. 838 (1986), to support his argument that there was no agreement to arbitrate. In Chan, the account executive had executed an agreement pursuant to which he agreed generally to be bound by the “Statute(s), Constitution(s), Rule(s) and By-Laws” of the organization to which he was applying for membership. 178 Cal.App.3d at 636, 223 Cal.Rptr. at 840. The court held that, under California law, the arbitration rule (Rule 347) of the New York Stock Exchange was not incorporated by reference into the general agreement signed by the account executive, noting that the agreement before that court did not even mention the word “arbitration.” The court held:
*698 “The language in paragraph 2C of the U-4 application set forth only that Chan agreed to abide ‘by the Statute(s), Constitution(s), Rules and By-laws’ and any amendments of the three organizations to which Chan’s application was to be submitted. Arbitration is nowhere mentioned in paragraph 2C. One of the organizations to which Chan submitted the application was the NYSE [New York Stock Exchange], which promulgated Rule 347, the rule requiring arbitration.
[[Image here]]
“... [W]e hold as a matter of law that the U-4 form, the alleged agreement, failed to clearly and unequivocally refer to the incorporated document. Unlike in the cases discussed ante, the reference did not identify any document or source by title. The reference was amorphous, and did not guide the reader to the incorporated document.” 178 Cal.App.3d at 643, 223 Cal. Rptr. at 844-45 (emphasis in original).
Unlike the agreement executed by the account executive in Chan, however, each of the three agreements executed by McKinney states on its face that the parties thereto agree to arbitrate any disputes arising among them.
We think Chan is inapposite for a further reason. A majority of this Court, when first faced with the question of whether a state court should enforce the provisions of the Federal Arbitration Act, held that the Federal Arbitration Act did not pre-empt state law regarding arbitration, and that an agreement to arbitrate a future dispute violated the public policy of this state. Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983) (Maddox, J., dissented, joined by Torbert, C.J.). On appeal, the Supreme Court of the United States vacated the judgment and remanded the case to this Court for further consideration. York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). On remand, this Court held that the views expressed in the dissenting opinion on original deliverance were consistent with the holding in South-land Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and denied the writ of mandamus. Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala.1984).
This Court now follows the rule that when there is an agreement to arbitrate a dispute under the provisions of the Federal Arbitration Act, this Court will enforce that agreement, in accordance with the federal policy as expressed in the Federation Arbitration Act and court decisions construing that Act. See Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala. 1986).
The federal courts have held that the arbitration provisions of the New York Stock Exchange are incorporated into Form U-4 and thus made binding on the parties. In Coenen v. R.W. Pressprich & Co., 453 F.2d 1209 (2d Cir.), cert, denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), a member of the Exchange sued a member firm on a dispute involving the unrestricted transfer of stock. The trial court stayed the action pending arbitration, holding that, in agreeing to abide by the rules and constitution of the Exchange, Coenen had agreed to submit to arbitration “any controversy,” including the one at issue, with a member firm. In affirming the lower court’s decision, the Second Circuit held:
“ ‘The constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself....
“ ‘Since the rules of the Exchange ‘constitute a contract between the members, the arbitration provisions which they embody have contractual validity....’ The Exchange provisions requiring arbitration constitute an agreement to arbitrate which is binding upon both [parties].’
[[Image here]]
“Coenen, moreover, signed a pledge, in his application for membership, that he would ‘abide by the Constitution ... as the same has been or shall be from time to time amended, and by all rules adopted pursuant to the Constitution .... ’ Accordingly, we have no doubt that Coenen agreed to arbitrate.
[[Image here]]
*699 “The drafters of the New York Stock Exchange arbitration clause intended it to be very broad_ The purpose behind the drafting of such a broad arbitration clause was, as much as possible, to keep disputes between members out of the courts. This policy is entirely consistent with the congressional grant of power to Stock Exchanges to govern themselves, contained in the Securities Exchange Act of 1934.... To hold that the present dispute is not arbitrable would frustrate this policy by making two Stock Exchange members settle their dispute in court....
“One desiring the benefits of membership in the New York Stock Exchange must be willing to live up to the responsibilities of such membership.”
453 F.2d at 1211-12 (citations omitted). See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983) (citing Coenen, supra, the Court held that “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability”) (footnote omitted); Tullís v. Kohlmeyer & Co., 551 F.2d 632, 636 (5th Cir.1977) (“[t]he crucial issue, as ... Coenen ... make[s] clear, is whether the party seeking to avoid arbitration is a member of the Exchange and thus has agreed to arbitration of disputes”).
In Aspero v. Shearson American Express, Inc., 768 F.2d 106 (6th Cir.), cert, denied, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985), a former account executive brought suit against her former employer, claiming defamation and intentional infliction of emotional distress as a result of alleged conduct by her office manager following the termination of her employment. The Sixth Circuit held that, although the plaintiff alleged tortious acts by her former employer that occurred after her termination, she was required to arbitrate her dispute in accordance with the arbitration provisons contained in her employment contract and Rule 347 of the New York Stock Exchange:
“When the employee’s role as a broker or the brokerage house’s role as an employer of brokers is the ‘specific source’ from which a controversy arises, even a controversy that is not based upon contractual rights or duties will be subject to arbitration under Rule 3j7.
[[Image here]]
“... We hold that when a party subject to NYSE Rule 347 seeks to compel arbitration of a claim which is brought after the termination of the employment relationship, and which is not based upon a contractual right or duty created by the employment agreement ... the proper question is whether resolution of the claim depends upon evaluation of a party’s performance either as a broker or as an employer of brokers during the time of the contractual relationship.” 768 F.2d at 109 (emphasis added).
Accord, Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163 (8th Cir.1984); Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447 (9th Cir.1986).
II
It is clear that the Federal Arbitration Act establishes a strong federal policy favoring arbitration, requiring that the courts “rigorously enforce” arbitration agreements. The latest expression of this policy is set forth in Shearson/American Express, Inc. v. McMahon, — U.S.-, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). There, respondents were customers of petitioner Shearson/American Express, Inc., a brokerage firm registered with the Securities and Exchange Commission, under customer agreements providing for arbitration of any controversy relating to their accounts. That case presented two questions. The first was whether a claim brought under § 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 48 Stat. 891, 15 U.S.C. § 78j(b), must be sent to arbitration in accordance with the terms of an arbitration agreement. The second was whether a claim brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et *700 seq., must be arbitrated in accordance with the terms of such an agreement. The Court held:
“The Federal Arbitration Act, 9 U.S.C. § 1 et seq., provides the starting point for answering the questions raised in this case. The Act was intended to ‘revers[e] centuries of judicial hostility to arbitration agreements,’ Scherk v. Alberto-Culver Co., supra, [417 U.S.] [506] at 510, [94 S.Ct. 2449 at 2452, 41 L.Ed.2d 270 (1974)] by ‘plac[ing] arbitration agreements “upon the same footing as other contracts.” ’ 417 U.S., at 511 [94 S.Ct., at 2453], quoting H.R. Rep. 96, 68th Cong., 1st Sess. 1, 2 (1924). The Arbitration Act accomplishes this purpose by providing that arbitration agreements ‘shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.’ 9 U.S.C. § 2. The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a ‘failure, neglect, or refusal’ to comply with the arbitration agreement, § 4.
“The Arbitration Act thus establishes a ‘federal policy favoring arbitration.’ Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, [103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that ‘we rigorously enforce agreements to arbitrate.’ Dean Witter Reynolds Inc. v. Byrd, 470 U.S. [213] at 221 [105 S.Ct. 1238 at 1243, 84 L.Ed.2d 158 (1985)]. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., [473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)], ‘we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals’ should inhibit enforcement of the Act ‘ “in controversies based on statutes.” ’ 473 U.S., at 627 [105 S.Ct. at 3354] quoting Wilko v. Swan, 346 U.S. 427, 432 [74 S.Ct. 182, 185, 98 L.Ed. 168] (1953). Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that ‘would provide grounds “for the revocation of any contract.” ’ ibid., the Arbitration Act ‘provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.’ Ibid.
The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act’s mandate may be overriden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. See 473 U.S., at 628 [105 S.Ct. at 3355]. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent ‘will be deducible from [the statute’s] text or legislative history,’ id., at 628 [105 S.Ct. at 3355], or from an inherent conflict between arbitration and the statute’s underlying purposes. See id., at 632-637 [105 S.Ct. at 3357-3359]; Dean Witter Reynolds Inc. v. Byrd, supra, [470 U.S.] at 217 [105 S.Ct. at 1240].
“To defeat application of the Arbitration Act in this case, therefore, the McMahons must demonstrate that Congress intended to make an exception to the Arbitration Act for claims arising under RICO and the Exchange Act, an intention discernible from the text, history, or purposes of the statute. We examine the McMahons’ arguments regarding the Exchange Act and RICO in turn.”
Ill
The next question we address is whether, under the facts of this case, Hutton made a timely demand for arbitration. The trial court specifically found that there was no waiver by Hutton. We agree.
*701 Because arbitration is so strongly favored, “ ‘the burden on one seeking to prove waiver is a heavy one.’ ” Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1, at 2 (Ala.1986) (quoting American Dairy Queen Corp. v. Tantillo, 537 F.Supp. 718, 720 (M.D.La.1982)). As set forth recently by this Court, to demonstrate waiver, McKinney must establish that (1) Hutton “substantially invoked the litigation process”; and (2) McKinney “suffered prejudice as a result.” {Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 494 So.2d at 3.) See also Ex parte Costa & Head (Atrium), Ltd., supra, 486 So.2d at 1276-77.
The Alabama rule is the same one that has been applied in other courts. In Masthead Mac Drilling Corp. v. Fleck, 549 F.Supp. 854 (S.D.N.Y.1982), the court held that waiver of arbitration under federal arbitration law cannot be found in the absence of a showing of substantial prejudice. There, the court held that the commencement of litigation by the moving party did not, of itself, constitute a waiver of arbitration rights.
In Brown v. E.F. Hutton & Co., 610 F.Supp. 76 (S.D.Fla.1985), plaintiff filed a five-count complaint against the defendant in connection with his account, alleging one federal securities claim (Count I) and multiple Florida statutory and common law claims (Counts II through IV).[1] In accordance with the customer agreement and the Federal Arbitration Act, Hutton moved for an order compelling arbitration on the state law claims. Because Hutton assumed that under Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the federal claim for violation of Section 10(b) of the Securities Exchange Act of 1934 was not subject to the arbitration provision of the contract and could be resolved only in a federal forum, it did not move to compel arbitration on that count.[2]
In Brown, the question of waiver was raised, and in Brown there had been some pre-trial discovery. The court commented on the waiver question, as follows:
“But even if the defendant should have made his demand earlier, delay alone does not constitute a default or a waiver of a valid arbitration clause. Since there is a strong federal policy favoring arbitration, ‘any party arguing waiver of arbitration bears a heavy burden of proof.’ Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir. 1982) (and cases cited therein). A party opposing arbitration must also demonstrate that he had been prejudiced by the delay. See Gavlick Construction Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3rd Cir.1975); Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2nd Cir.1968). This Plaintiff has failed to do.
“The pretrial discovery conducted in this case cannot have prejudiced the Plaintiff in that the discovery does not appear to have been extensive. The record indicates that since the institution of this litigation there has only been one deposition taken and it was noticed by the Plaintiff. While the Defendant propounded interrogatories and has served a production request, the discovery has been limited to the issues of the Resorts International trade. There has been no discovery of the alleged wrongdoings set forth in the second amended complaint with the exception of the aforesaid trade.
“In Mitsui & Co. v. C. & H Refinery, Inc., 492 F.Supp. 115 (N.D.Cal.1980) the district court upheld one party’s right to arbitrate claims notwithstanding discovery initiated by both parties. The court opined: ‘If the discovery record is sparse, an objecting party must show specifically how its case has been impaired. Absent such a showing, the strong policy favoring arbitration con- *702 tools.’ Id. at 120. Since the Plaintiff here has not made a specific showing of prejudice, the Defendant is entitled to invoke its contract right.”
610 F.Supp. at 79.
In view of the fact that in this case over two years had elapsed before Hutton invoked the arbitration clause, and in view of the fact that extensive preparation was being made to try the claims sought to be arbitrated, it would appear that, as a matter of law, there was a waiver, but when the particular facts of this case are analyzed, it appears that McKinney’s claims did not become arbitrable until Hutton entered into a settlement agreement of the Lanes’ claim, and that Hutton did not substantially invoke the litigation process with respect to the claims after that time.
As initially framed by the plaintiffs in January 1984, the Lane action contained both nonarbitrable claims (those involving the plaintiffs, with whom neither Hutton nor McKinney had an arbitration agreement) and arbitrable claims (those involving Hutton and McKinney). Because the arbitrable claims were “inextricably intertwined” with the nonarbitrable claims, arbitration was not available to Hutton. Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir.1976), cert, denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); Sawyer v. Raymond, James & Associates, Inc., 542 F.2d 791, 792-93 (5th Cir.1981); Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023, 1026 (11th Cir.1982); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1172 (11th Cir.1982).
In March 1985, the United States Supreme Court rendered an opinion in which it rejected the so-called intertwining doctrine that had theretofore been followed by the Fifth and Eleventh Circuits. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Court held that the Federal Arbitration Act (9 U.S.C. §§ 1-14) requires arbitration of arbitrable claims even where such claims are intertwined with nonarbitrable ones.
This Court specifically followed the principle of the Dean Witter case in Ex parte Costa & Head, supra.
Even though a significant time period elapsed after McKinney first filed its cross-claim against Hutton, and even though there was significant pre-trial discovery made, we cannot find that the trial court erred in finding that Hutton did not waive its rights, because of (1) the strong federal policy that favors arbitration, and (2) the failure of McKinney to show prejudice because of the delay.
The trial judge could have found that it was not until May 23, 1986, when the Lanes' nonarbitrable claims against Hutton and McKinney were dismissed with prejudice, that Hutton’s right to arbitration crys-talized. Indeed, the trial judge concluded that recognition of the potentially harsh consequences of collateral estoppel, or issue preclusion, would have compelled the court to deny a demand for arbitration made by Hutton prior to the May 23, 1986, dismissal of the Lanes’ claims:
“I’ve spoken inartfully of whipsaw effect. One of these cases speaks of it a lot more artfully of [sic] a preclusion effect. And what worries me is, suppose they [Hutton] had moved for arbitration in the — oh, I don’t know, a year or so ago. I would think that the judge of this court would have denied that, thinking that would be horribly unfair to McKinney, to split his claim out, send it to arbitration, then ask that arbitrator to wait and see what the Lanes did to everybody, because what would be likely to happen, or what would be one of the possibilities, would be that the jury could come back with a verdict, maybe on interrogatories, maybe some other way, finding not only that E.F. Hutton had been guilty of fraud against the Lanes but that McKinney, rather than being an innocent middleman, was in cahoots with E.F. Hutton and part of the fraud. And that would preclude the arbitrator or would seem to gut anything the arbitrator could do for McKinney.
“Certainly when McKinney would try to bring his claim before the arbitrator *703 after a judgment like that, E.F. Hutton would say, well, wait a minute, this issue has been settled. The Court ruled and the judgment is that McKinney was a part of the fraud.
[[Image here]]
“... [T]his has troubled me, and I may as well tell you.
“When you have an issue that’s common to what’s before the Court on the one hand and what would be before the arbitrator on the other, then one forum or the other is going to get precluded by the ruling of whatever forum gets to it first.” (Transcript of the September 11, 1986, hearing before Judge Johnstone, at pages 48-49 and 56; see Hutton Appendix, Exhibit E.)
See Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1360 (11th Cir. 1986) (“[w]hen an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated”); Belke v. Merrill Lynch, Pierce, Fenner & Smith, supra, 693 F.2d at 1027 (because an arbitrator, in attempting to evaluate the arbi-trable claims, would have been “ ‘impelled to review the same facts’ ” presented to the court on the nonarbitrable claims, “a motion to compel arbitration at the outset of this litigation, prior to dismissal of the ... [nonarbitrable] claims, would have been futile”).
The trial judge was also authorized to find that from May 23, 1986, until September 5, 1986, the date on which Hutton moved to compel arbitration, neither Hutton nor McKinney substantially invoked the litigation process, and that the expiration of this time did not constitute a wavier of Hutton’s right to arbitration.
Furthermore, the trial judge was authorized to find from the evidence before him that McKinney had not been prejudiced by Hutton’s demand for arbitration, and to conclude that McKinney failed to satisfy the second prong of the two-pronged waiver test set forth in Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 494 So.2d 1. In other words, the trial court was authorized to find that Hutton’s limited discovery in regard to McKinney was taken primarily for the purpose of defending against the Lanes’ nonarbitrable claims, and was taken in Mobile, at little or no expense to McKinney. The record shows that McKinney never noticed or took a single deposition in defense of the Lanes’ claims or in furtherance of his cross-claim against Hutton. Cf. E.C. Ernst, Inc. v. Manhattan Construction Co., 559 F.2d 268, 269 (5th Cir.1977) (per curiam) (holding that defendant had waived its right to arbitration where it engaged the plaintiff in more than three years’ worth of pre-trial proceedings, which culminated in a 40-day bench trial), cited by McKinney in his application for rehearing, Exhibit 1, at 23-24 and 27-28. (See also the trial court and initial appellate court opinions in E.C. Ernst, Inc., reported at 387 F.Supp. 1001 (S.D.Ala.1974), and 551 F.2d 1026 (5th Cir. 1977), respectively.)
With respect to Hutton’s discovery as to the plaintiffs and various third-party defendants and non-parties, McKinney was in no way involved. While he declined to attend virtually all the depositions, he did, of course, benefit from them in preparing his defense to the Lanes’ claims. Ultimately, as a result, in part, of these discovery efforts, Hutton settled the $20 million Lane lawsuit and secured dismissals of the plaintiffs’ claims against both itself and McKinney — at no cost to McKinney.
It has been decided by the New York Stock Exchange that the arbitration proceeding demanded by Hutton will be held in New Orleans, a neighboring city of Mobile. (Hutton Appendix, Exhibit L.) McKinney will thus be able to easily drive to and from the arbitration. We believe the evidence supports the trial court’s determination that McKinney will not be prejudiced by having to present his claim to a New York Stock Exchange arbitration panel assembled in New Orleans.
Finally, as Judge Johnstone correctly noted, McKinney has undertaken no case *704 preparation that he would not have undertaken for the arbitration proceeding. The judge concluded that McKinney had failed to demonstrate any “practical prejudice” that he had suffered as a result of Hutton’s arbitration demand:
“Let me ask you about prejudice.... And rather than theoretical prejudice, real practical prejudice. What has Mr. McKinney had to do that he wouldn’t have had to do, because the Lanes were suing him anyway? I mean, the Lanes were suing him anyway, and they weren’t going to turn him loose.” (Transcript of the September 11, 1986, hearing before Judge Johnstone at page 13; see Hutton Appendix, Exhibit E.)
Indeed, McKinney virtually conceded that his modest litigation expenses in this case would have been incurred independently of his cross-claim against Hutton:
“THE COURT: Let me ask you this. Have you had an opportunity to break out those expenses that would be attributable to the suit by the Lanes against McKinney as opposed to those that are attributable to McKinney’s suit against E.F. Hutton? Have you been able to separate those out?
“MR. DUFFY: Well, they’re all one and the same.
“THE COURT: I see. He would have incurred them anyway?
“MR. DUFFY: Well, I’m trying to think how you would handle that.... I don’t know how I can break it down....” (Transcript of the October 24,1986, hearing before Judge Johnstone at pages 71-72; see Hutton Appendix, Exhibit F.)
Pursuant to this Court’s two-pronged waiver test, failure to satisfy either part of the test mandates a finding that the right to arbitration has not been waived. Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 494 So.2d at 3 (“ ‘[e]ven if the Court assumes that there was invocation of the litigation process by the defendants, a finding of waiver cannot be made absent a showing of prejudice to the party opposing arbitration’ ”). We hold, therefore, that McKinney has failed to satisfy both parts of the test. Accordingly, his claim of waiver must be rejected.
CONCLUSION
After reviewing the record in this case, we are convinced that the trial court correctly applied the federal law of arbitration to the facts of this case, and we conclude that petitioner McKinney has not shown that the trial judge abused his discretion in determining that the dispute between Hutton and McKinney was subject to arbitration and that Hutton had not waived its right to compel arbitration. Based on the foregoing, therefore, McKinney’s petition for writ of mandamus is due to be, and it hereby is, denied.
APPLICATION FOR REHEARING GRANTED; PETITION FOR WRIT OF MANDAMUS DENIED.
BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON, J., concur in the result.
JONES, SHORES and STEAGALL, JJ., dissent.
HOUSTON, J., not sitting.

. Count I alleged Hutton’s violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240-10b-5. Counts II, III, IV and V allege fraudulent misrepresentation, violations of Section 517.211 and 517.301, Florida Statutes, and breach of fiduciary duty, respectively.

. In view of the holding in Shearson/American Express, Inc. v. McMahon, Hutton's assumption in that case may have been inaccurate.