[No. A068503. First Dist., Div. Three. Feb. 6, 1996.]

STANLEY KALMANOVITZ et al., Plaintiffs and Respondents, v.
WILLIAM BITTING, as Temporary Special Administrator, etc., et al.,
Defendants and Appellants.

RONALD WEIBELT, Plaintiff and Respondent, v.
WILLIAM BITTING, as Temporary Special Administrator, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Hill, Farrer & Burrill, Dean E. Dennis and Thomas F. Reed for Defendants and Appellants.

Daniel E. Lungren, Attorney General, and Yeoryios C. Apallas, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

Driver, Driver & Hunt and Thomas M. Hunt, Jr., for Plaintiffs and Respondents.

OPINION

CORRIGAN, J.—William Bitting, acting as temporary special administrator and proposed executor of the estate of Lydia Kalmanovitz, appeals from the trial court's orders granting summary judgment for plaintiffs (hereafter claimants) as third party beneficiaries of a will agreement between Lydia Kalmanovitz and her predeceased husband. Bitting contends: (1) the trial court misinterpreted the meaning of the will agreement, and (2) claimants may not enforce the will agreement because they were not intended third party beneficiaries of that agreement. Our resolution of the second claim obviates the need to consider the first. We reverse and remand.

### Factual and Procedural Background

Lydia and Paul Kalmanovitz were the sole owners of S & P Company. In October 1986, when they asked their attorney to prepare their wills, their combined assets were worth approximately $480 million. They had no children and wished to leave everything to each other and then to charity upon the death of the survivor. Addressing their concern about estate taxes, their attorney, Bitting, suggested they use a will agreement binding the survivor to leave everything to a charitable foundation. They also discussed specific bequests to several S & P Company officers and three of Lydia's[1] nephews. Paul initially said he did not wish to leave anything to his relatives. There was no discussion of whether the will agreement would have any binding effect on the specific bequests.

On November 14, 1986, Paul and Lydia executed a will agreement and identical wills. While the wills themselves included several specific bequests to individuals and a trust to care for their pets, the will *agreement* referred only to Paul and Lydia's intention to leave their estate to a charitable trust. None of the claimants, who are three of Paul's relatives and one former employee, was named in either the agreement or the wills.

On December 22, 1986, Paul and Lydia executed identical first codicils to their wills, in each other's presence. These codicils added specific bequests of $100,000 each to claimants Alma, "Karl [sic]" and Stanley Kalmanovitz, three of Paul's relatives,[2] and to claimant Ronald Weibelt, Paul and Lydia's

---

[1]To assist the reader in distinguishing among the family members, we refer to Mr. and Mrs. Kalmanovitz by their first names.

[2]It was at Lydia's suggestion that Paul agreed to leave something to these relatives, whose names Lydia had found in old letters. An assistant who worked closely with Paul for nine years reported that Paul had repeatedly denied he had any relatives other than Lydia.

boat captain/chauffeur.[3] There was no discussion regarding changes to the separate will agreement at the time the first codicils were signed. Paul died a month later. Claimants each received their $100,000 bequests under his will.

In December 1987, Lydia executed a second codicil deleting the bequests to Alma, "Karl [sic]," and Stanley Kalmanovitz. In July 1988, she executed a third codicil, deleting the bequest to Weibelt after he left her employment without notice. Lydia later executed additional codicils and a new 1992 will, all leaving the bulk of the estate to charity with a number of bequests to individuals.

After Lydia's death, Alma, Karol, and Stanley Kalmanovitz brought a complaint for breach of the will agreement seeking $100,000 each as third party beneficiaries. A short time later, Weibelt filed a complaint on the same theory. The two actions were consolidated. Summary judgment was granted for claimants on separate motions, and the cases were reconsolidated by stipulation on appeal.[4]

### Third Party Beneficiary Issue

■ Claimants cannot recover directly under Lydia's will, since she changed it to delete the bequests to them. Claimants instead argue that Lydia's deletion of their bequests violated the previous will agreement between Lydia and Paul. ■ However, in order to recover as third party beneficiaries of Paul and Lydia's will agreement, claimants must show the agreement was made expressly for their benefit. (Civ. Code, § 1559.) While it is not necessary that a third party be specifically named, the contracting parties must clearly manifest their intent to benefit the third party. (*City & County of San Francisco* v. *Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 120-121 [22 Cal.Rptr. 216].) "The fact that [a third party] is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." (*Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 871 [102 Cal.Rptr. 89], italics in original.)

The question is whether claimants were intended, and not merely incidental, beneficiaries of the contract they seek to enforce. In answering, we read the will agreement as a whole in the light of the circumstances under which

---

[3]Another employee was also included, but she predeceased Lydia.

[4]The Attorney General has filed a brief in support of appellants, based on his statutory responsibility to protect testamentary charitable gifts from legal challenges.

it was created. The test is whether an intent to benefit claimants appears from the terms of the agreement. (*Walters* v. *Calderon*, *supra*, 25 Cal.App.3d at p. 870.) We make an independent interpretation of the will agreement, since the trial court's construction of this contract was not based on the credibility of conflicting extrinsic evidence. (*Milazo* v. *Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632].)

In other cases where disinherited claimants have invoked their rights as third party beneficiaries of a will agreement, the claimants have been clearly specified beneficiaries of the agreement at the time it was made. (See, e.g., *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 587-588 [2 Cal.Rptr. 609, 349 P.2d 289]; *Sonnicksen* v. *Sonnicksen* (1941) 45 Cal.App.2d 46, 52 [113 P.2d 495].) ▮ The will agreement here, however, makes no mention of bequests to any specific individuals. Read as a whole, the will agreement clearly reveals Paul and Lydia's intent to leave their substantial estate to charity and to minimize estate taxes in the process. Paul and Lydia entered into the agreement to assure that the survivor would not depart from this basic plan. The agreement was not intended to benefit any specific individuals, much less claimants, who were not even named as beneficiaries in the original wills executed pursuant to the will agreement.

Having protected their charitable testamentary intentions through the will agreement, Paul and Lydia executed wills comporting with that agreement and leaving the vast bulk of their estate to charity. They did also leave cash bequests to specific individuals in these wills. However, claimants here were not mentioned.

Approximately five weeks later, Paul and Lydia executed identical first codicils, naming claimants for the first time as recipients of $100,000 bequests. Although claimants thus became potential beneficiaries of Paul's and Lydia's wills, they were never intended beneficiaries of the will *agreement*, which was not amended at the time the first codicils were signed.[5] Indeed, the fact that Paul and Lydia felt free to add the first codicils, making specific bequests to claimants, without any reference to or amendment of the will agreement, confirms our interpretation of that agreement as intended to preserve Paul and Lydia's charitable testamentary intentions and not to

---

[5]Their status as beneficiaries of Lydia's will was, of course, only temporary, since she later deleted them in her second and third codicils, thus giving rise to this lawsuit. Under the third paragraph of the will agreement, Lydia and Paul promised not to revoke or modify any term of "the Will" which they executed pursuant to the agreement. As noted above, claimants were not mentioned in the wills executed on the same day as the agreement; they were added by a codicil five weeks later. There is no evidence to support claimants' assertion that Lydia could not make changes to subsequent codicils without violating the agreement.

create unalterable entitlements in specific individuals.[6] The parties' practical construction of a contract, as shown by their actions, is important evidence of their intent. (See *Crestview Cemetery Assn.* v. *Dieden* (1960) 54 Cal.2d 744, 752 [8 Cal.Rptr. 427, 356 P.2d 171]; *Hernandez* v. *Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1814 [34 Cal.Rptr.2d 732].)

Thus, claimants may not sue to enforce their interpretation of the will agreement, because the agreement was not made for their benefit. ██ " ' "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. . . ." ' [Citations.]" (*Jones* v. *Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].)[7]

## Disposition

The summary judgments in favor of claimants are reversed. The matter is remanded for further proceedings consistent with the views expressed in this opinion. Costs to appellants.

Chin, P. J., and Parrilli, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 18, 1996. Chin, J., did not participate therein.

---

[6]Claimants assert that it makes no difference whether they were to receive the bulk of the estate or only a small portion thereof. While it is true that a third party beneficiary need not be the only or the primary beneficiary in order to recover, he must be an intended beneficiary of the contract in question. Claimants were not intended beneficiaries of the will agreement, as discussed above.

[7]Because we conclude claimants were not intended third party beneficiaries of the will agreement and therefore may not invoke its protection, we need not address the issue of whether Lydia's execution of the second and third codicils to her will was in conflict with that agreement.