[No. D022836. Fourth Dist., Div. One. Sept. 23, 1997.]

JOHN PAUL CIONE, Plaintiff and Respondent, v.
FORESTERS EQUITY SERVICES, INC., Defendant and Appellant.

COUNSEL

Morgan, Lewis & Bockius, Loyd P. Derby and John S. Battenfeld for Defendant and Appellant.

Matthew R. Rutherford for Plaintiff and Respondent.

OPINION

KREMER, P. J.—Defendant Foresters Equity Services, Inc. (FESCO), appeals an order denying its motion to compel arbitration and stay plaintiff John Paul Cione's lawsuit for wrongful termination of employment. Asserting it was the third party beneficiary of an agreement by Cione to arbitrate the parties' dispute, FESCO contends the court should have compelled

arbitration. We reverse and direct the superior court to enter an order granting FESCO's motion to compel arbitration.

## I

### INTRODUCTION

Soon after going to work for FESCO, Cione applied for registration with a securities industry self-regulatory organization. As part of his registration application form, Cione agreed to arbitrate any dispute with FESCO required to be arbitrated under the regulatory organization's rules. About three years later, Cione and FESCO executed a written employment agreement containing no reference to arbitration or to Cione's industry registration form.

When a dispute arose about the circumstances surrounding Cione's separation from employment with FESCO, FESCO submitted the matter to industry arbitration. Cione filed this lawsuit against FESCO for wrongful termination. Based upon Cione's industry registration form, FESCO asked the superior court to compel arbitration. Denying FESCO's motion, the court concluded the parties' written employment agreement was an integrated contract not incorporating the arbitration provision of Cione's industry registration form or otherwise providing for arbitration.

## II

### FACTS

On May 9, 1988, Cione began employment with FESCO, a "member" firm of the National Association of Securities Dealers, Inc. (NASD).[1]

On May 12, 1988, Cione signed a Uniform Application for Securities Industry Registration (Form U-4) requesting registration as a "registered options principal," "full registration/general securities representative," "general securities sales supervisor," "general securities principal," "municipal securities principal," and "agent."[2] On the Form U-4, Cione identified FESCO as his employing "firm." The Form U-4 contained an arbitration clause providing: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that

---

[1]"NASD is a self-regulated organization under § 28(b) of the Securities Exchange Act of 1934 that regulates investment brokers and broker dealers. 15 U.S.C. § 78bb(b)." (*Wojcik* v. *Aetna Life Ins. and Annuity Co.* (N.D.Ill. 1995) 901 F.Supp. 1282, 1284, fn. 1.)

[2]"The U-4 application is used to register securities dealers with different exchanges and associations, such as the NASD and the New York Stock Exchange." (*Wojcik* v. *Aetna Life Ins. and Annuity Co., supra,* 901 F.Supp. at p. 1285, fn. 3.)

is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time." In item 10 of the Form U-4, Cione registered with NASD.

On May 21, 1991, Cione and FESCO entered into a written employment agreement containing provisions involving the length of Cione's employment and methods for terminating the agreement. Among the stated reasons for termination for cause was Cione's "failure to maintain any license necessary for the performance of his duties hereunder." The written employment agreement between Cione and FESCO also included an "integration" clause providing: "This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to in this Agreement."

On June 29, 1994, Cione resigned from his employment with FESCO, assertedly under threat of discharge. A dispute arose between Cione and FESCO about Cione's separation from employment and the terms of his severance agreement.

On September 30, 1994, FESCO submitted its dispute with Cione to NASD for arbitration.[3]

III

SUPERIOR COURT PROCEEDINGS

On October 6, 1994, Cione sued FESCO for wrongfully terminating his employment.

---

[3]"In October 1993, the NASD amended its rules to provide expressly for compulsory arbitration of employment related-disputes. [Citation.]" (*Scher* v. *Equitable Life Assur. Soc. of U.S.* (S.D.N.Y. 1994) 866 F.Supp. 776, 777.) Thus, at the time of Cione's separation from employment with FESCO in June 1994, section 1 of NASD's Code of Arbitration Procedure (NASD Code) provided that, with exceptions inapplicable here, such code was adopted under NASD's bylaws "for the arbitration of any dispute, claim, or controversy . . . arising out of the employment or termination of employment of associated person(s) with any member . . . ." Further, section 8(a) of the NASD Code provided that any such "dispute, claim, or controversy . . . arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: [¶] . . . [¶] (2) a member against a person associated with a member . . . ."

In NASD's parlance, FESCO was a "member" and Cione was an "associated person" or "person associated with a member."

On October 28, 1994, FESCO filed a motion to compel arbitration and stay this lawsuit. (Code Civ. Proc., § 1280 et seq.;[4] 9 U.S.C. § 1 et seq. (the Federal Arbitration Act (FAA)).) FESCO asserted that under Form U-4 Cione agreed to arbitrate any controversy arising between Cione and FESCO involving his employment and its termination.

On November 10, 1994, filing opposition to FESCO's motion to compel arbitration, Cione asserted his written employment agreement with FESCO was an "integrated contract" that set forth the parties' entire understanding about the terms of his employment with FESCO and did not contain any provision obligating him to arbitrate matters arising out of such written employment agreement.

On December 13, 1994, in further opposition to FESCO's motion, Cione executed and filed his declaration asserting that in dealing with written employment contracts during his employment in the securities industry for more than 25 years, his experience was that "NASD member firms insert specific arbitration clauses into such written employment contracts if in fact the parties agree to arbitrate their employment disputes and wish to insure that such disputes are in fact arbitrated."[5] Cione's declaration also asserted that the lack of an arbitration provision in his written employment agreement with FESCO "signifies the specific agreement between myself [sic] and FESCO that arbitration with the NASD was not to be the sole forum for resolution of employment related disputes."

On December 16, 1994, in the superior court, counsel orally argued FESCO's motion to compel arbitration and stay this lawsuit.

On December 20, 1994, the superior court entered an order denying FESCO's motion.[6]

FESCO appeals.

[4]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[5]Attached to Cione's declaration were three purported "sample" employment contracts given to Cione during the past three years containing asserted "broad" arbitration and integration clauses, to wit, (1) a December 1992 agreement between Prudential Securities Incorporated and an employee; (2) a December 19, 1990, agreement between Dean Witter Reynolds, Inc. (Dean Witter) and an employee; and (3) a February 12, 1990, agreement between Dean Witter and another employee.

[6]In its order denying FESCO's motion to compel arbitration and stay this lawsuit, the superior court found the terms of the Form U-4 signed by Cione in 1988 when registering with NASD were "not incorporated as a provision of the 1991 employment contract" between Cione and FESCO. The court also found that Cione's execution of the Form U-4 did not mandate arbitration here since Cione and FESCO later entered into an "integrated contract" neither providing for arbitration nor incorporating Form U-4's arbitration clause. Noting the inapplicability of the FAA until an arbitration clause was determined to be part of the contract

IV

DISCUSSION

FESCO contends the superior court erred in concluding that, although silent on the issue of arbitration, Cione's written employment agreement with FESCO negated Cione's separate written agreement (Form U-4) with NASD to arbitrate his employment dispute with FESCO. FESCO asserts federal and state law compelled a conclusion that Form U-4 obligated Cione to arbitrate.

In response, Cione essentially contends the written employment agreement's silence on the issue of arbitration, together with its integration clause, mandated a conclusion such agreement superseded the Form U-4 arbitration clause. However, as we shall explain, in light of the strong public policies favoring arbitration, on this record the superior court should have granted FESCO's motion to compel arbitration.

A

ANALYSIS

■ "Congress enacted the FAA 'to reverse the longstanding judicial hostility to arbitration agreements . . . .' [Citation.] 'Its primary substantive provision states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ' [Citations.]" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 458 [10 Cal.Rptr.2d 427], quoting 9 U.S.C. § 2.) " 'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' [Citations.] [¶] ' "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." [Citation.]' [Citation.]" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc.*, *supra*, at pp. 458-459.)

■ "It is well settled that disputes between a member of a national stock exchange and its employee are governed by the [FAA] where there is a

and citing *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 639-645 [223 Cal.Rptr. 838], the superior court concluded federal law did not displace state law "on the general principles governing the formation of a contract."

binding arbitration agreement. [Citations.] In such instances, questions concerning the construction and scope of the arbitration clause are determined by federal law. [Citation.] However, the '*existence* of a valid agreement to arbitrate involves general contract principles, and state law governs disposition of that question. [Citations.]' [Citation.]" (*Baker* v. *Aubry* (1989) 216 Cal.App.3d 1259, 1263 [265 Cal.Rptr. 381].)

Similarly, in *Heily* v. *Superior Court* (1988) 202 Cal.App.3d 255, 258 [248 Cal.Rptr. 673], the appellate court observed that "in *Perry* v. *Thomas* (1987) 482 U.S. 483 . . . , the court directly confirmed that the FAA controls lawsuits brought by employees against securities brokerage firms." "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (*Id.* at p. 259.)

In deciding whether Cione's employment dispute claims against FESCO were arbitrable, we must determine (1) whether an agreement to arbitrate existed, (2) whether FESCO waived its right to compel arbitration, and, if not, (3) whether Cione's claims came within the scope of such arbitration agreement. (*Wojcik* v. *Aetna Life Ins. and Annuity Co., supra*, 901 F.Supp. at p. 1286, citing *Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 24-34 [111 S.Ct. 1647, 1651-1656, 114 L.Ed.2d 26]; accord, *Hall* v. *MetLife Resources* (S.D.N.Y. 1995) Fed. Sec. L. Rep. (CCH) ¶ 98,742, p. 2.)

1

*Formation of Contract to Arbitrate*

■ "The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Engineers & Architects Assn.* v. *Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) ■ As noted, the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally. (*Platt Pacific, Inc.* v. *Andelson* (1993) 6 Cal.4th 307, 313 [24 Cal.Rptr.2d 597, 862 P.2d 158]; *Engineers & Architects Assn.* v. *Community Development Dept., supra*, at p. 653; *Baker* v. *Aubry, supra*, 216 Cal.App.3d at p. 1263; *Heily* v. *Superior Court, supra*, 202 Cal.App.3d at pp. 258-259; *Chan* v. *Drexel Burnham Lambert, Inc., supra*, 178 Cal.App.3d at pp. 639-640.) Hence, in seeking to compel arbitration, FESCO was required

to prove the existence of an enforceable agreement containing a provision mandating arbitration of the employment dispute between Cione and FESCO. (*Pagett* v. *Hawaiian Ins. Co.* (1975) 45 Cal.App.3d 620, 623-624 [119 Cal.Rptr. 536].) According to Cione, FESCO did not satisfy such affirmative burden. We disagree.

Cione does not deny he signed a Form U-4 containing an arbitration provision when registering with NASD. Such agreement to arbitrate was a contract with NASD, not with FESCO. (*Gilmer* v. *Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. at p. 25, fn. 2 [111 S.Ct. at pp. 1651-1652]; *O'Donnell* v. *First Investors Corp.* (S.D.N.Y. 1995) 872 F.Supp. 1274, 1277.) Further, the arbitration agreement was not simply the Form U-4 but instead also included the NASD Code expressly incorporated by reference into such form. (*Baker* v. *Aubry*, *supra*, 216 Cal.App.3d at p. 1265; *Wojcik* v. *Aetna Life Ins. and Annuity Co.*, *supra*, 901 F.Supp. at p. 1286.) However, citing *Chan* v. *Drexel Burnham Lambert, Inc.*, *supra*, 178 Cal.App.3d 632, Cione contends the superior court properly denied FESCO's motion to compel arbitration. Cione's reliance on *Chan* is misplaced.

Nothing in *Chan* v. *Drexel Burnham Lambert, Inc.*, *supra*, 178 Cal.App.3d 632, mandated denial of FESCO's motion to compel arbitration of this lawsuit. Instead, *Chan* was based upon a version of Form U-4 substantially different from the form signed by Cione. Distinguishing *Chan*, the appellate court stated in *Baker* v. *Aubry*, *supra*, 216 Cal.App.3d at page 1264: "The U-4 form at issue in the instant case is markedly different from the form at issue in *Chan.* The most significant distinction is that the U-4 form signed by Baker clearly indicated her agreement to *arbitrate.* The basic arbitration provision was contained in the U-4 itself and not in a secondary document. In *Chan* the U-4 form contained no language notifying the applicant of an arbitration provision. The applicant there was forced to search the body of rules to find the arbitration provision." (*Baker* v. *Aubry*, at p. 1264, italics in original.) Similar to the situation in *Baker* v. *Aubry*, *supra*, the Form U-4 executed by Cione clearly contained a provision requiring arbitration of disputes with FESCO. (Cf. *Spellman* v. *Securities, Annuities & Ins. Services, Inc.*, *supra*, 8 Cal.App.4th at pp. 457-458.)[7]

In sum, applying state law principles involving formation of contract, we conclude Cione entered into an agreement to arbitrate when in registering with NASD he executed a Form U-4 containing an express arbitration clause. (*Baker* v. *Aubry*, *supra*, 216 Cal.App.3d at p. 1265.)

---

[7]In *Spellman* v. *Securities, Annuities & Ins. Services, Inc.*, *supra*, 8 Cal.App.4th 452, the appellate court enforced a terminated employee's obligation to arbitrate employment disputes under a version of Form U-4 substantially similar to the form executed by Cione. The court stated Form U-4 "expressly requires arbitration." (*Id.* at p. 457.)

## 2

### *Enforceability of Cione's Contractual Obligation to Arbitrate*

 As discussed, the right to compel arbitration depends upon a contract. (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 653.) Cione contends the superior court properly concluded his arbitration agreement with NASD contained in Form U-4 was rendered unenforceable by FESCO by virtue of the "integration" clause of his written employment agreement with FESCO lacking any provision for arbitration. However, Cione's contention betrays a misunderstanding of the contract FESCO sought to enforce. FESCO did not seek to enforce its written employment agreement with Cione. Instead, as an intended third party beneficiary, FESCO sought enforcement of Cione's Form U-4 agreement with NASD. (Civ. Code, § 1559; *Div. of Lab. Law Enforcement* v. *Dennis* (1947) 81 Cal.App.2d 306, 309 [183 P.2d 932];[8] cf. *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429, 433 [55 Cal.Rptr. 248, 421 P.2d 96]; *Sublett* v. *Henry's etc. Lunch* (1942) 21 Cal.2d 273, 275 [131 P.2d 369].)[9]

 "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered. [Citation.]" (*Eastern Aviation Group, Inc.* v. *Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452 [8 Cal.Rptr.2d 355]; accord, *Bancomer, S. A.* v. *Superior Court* (1996) 44 Cal.App.4th 1450, 1458 [52 Cal.Rptr.2d 435].) Here, the intent to benefit FESCO appears from the terms of the Form U-4. (*Kalmanovitz* v. *Bitting* (1996) 43 Cal.App.4th 311, 315 [50 Cal.Rptr.2d 332].) Cione signed a Form U-4 containing his agreement "to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated

---

[8]Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

In actions brought under Civil Code section 1559, "it frequently happens that two separate and distinct contracts are involved, but this has not prevented the action from being considered as one brought on the contract made for the benefit of the third party, although he also had another contract with one of the parties to the contract sued upon . . . ." (*Div. of Lab. Law Enforcement* v. *Dennis, supra,* 81 Cal.App.2d at p. 309.)

[9]"An employee who is hired pursuant to a collective bargaining agreement between a labor union and an employer is deemed to be a third party beneficiary, with a relationship to the employer the same as if the contract had been made directly with him. [Citations.]" (*Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd., supra,* 65 Cal.2d at p. 433.) "The conclusion that the employee is an intended beneficiary of a contract between a union and an employer to pay union wages has been reached by most of the courts which have considered the problem. [Citations.]" (*Sublett* v. *Henry's etc. Lunch, supra,* 21 Cal.2d at p. 275.)

under the rules, constitutions, or by-laws of the organizations with which I register . . . ." On the Form U-4, Cione registered specifically with NASD and identified his "firm" as FESCO. Hence, FESCO was an express beneficiary of Cione's Form U-4 agreement with NASD. (*Eastern Aviation Group, Inc.* v. *Airborne Express, Inc., supra,* at p. 1452.)

FESCO's motion to compel arbitration, grounded specifically on Cione's execution of the Form U-4, was tantamount to a suit in equity seeking specific performance of Cione's agreement with NASD. (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 653.) Opposing FESCO's motion, Cione essentially contended that third party beneficiary FESCO effectively waived any right to compel arbitration by entering into the written employment agreement containing an "integration" clause assertedly superseding Cione's Form U-4 arbitration obligation. However, even if the written employment agreement between Cione and FESCO were deemed to constitute the entire agreement between those two parties, such agreement said nothing about the intention of Cione and NASD with respect to the Form U-4 arbitration clause FESCO sought to enforce. (*O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. at p. 1277.)

In *O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. 1274, the court rejected a contention that an employment contract superseded a Form U-4 arbitration agreement. The court observed the Form U-4 "is not a contract with defendants but rather an application to qualify with various security exchanges. The U-4 is a separate contract, and as long as this contract is effective, the terms of the agreement must be followed, regardless of the fate of a separate, though related, agreement." (*Id.* at p. 1277.) In *O'Donnell* v. *First Investors Corp.,* the court also found "there was no clear and unambiguous agreement to waive or supersede the U-4 agreement." (*Ibid.*) Similarly, this record does not demonstrate any intent by FESCO (or by NASD) that the written employment agreement would waive or supersede Cione's Form U-4 arbitration obligation.

The "integration" clause of Cione's written employment agreement with FESCO provided: "This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to in this Agreement." Hence, by its terms the scope of the integration clause was "limited" to the "subject matter contained" in the written employment agreement. (*Hayter Trucking, Inc.* v. *Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14 [22 Cal.Rptr.2d 229]; cf. *Wallis* v. *Farmers Group, Inc.* (1990) 220 Cal.App.3d

718, 729-730 [269 Cal.Rptr. 299].)[10] Although containing provisions about the length of Cione's employment and methods for its termination, the written employment agreement did not specify any forum for resolving any disputes between the parties whether arising from Cione's separation from employment or otherwise. Neither did the written employment agreement refer to Cione's Form U-4 arbitration agreement with NASD or otherwise make any mention of arbitration. In sum, neither in its integration clause nor elsewhere did the written employment agreement suggest it stated the parties' entire agreement as to all matters or that it otherwise superseded Cione's prior written arbitration agreement with NASD. On the contrary, the written employment agreement expressly recognized Cione's continuing obligation to comply with securities industry requirements by providing for termination if Cione failed to "maintain any license necessary for the performance of his duties hereunder."[11]

In *Thorup* v. *Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228 [225 Cal.Rptr. 521], the appellate court stated ". . . the right to arbitrate, like any other contract right, can be waived, either expressly or by implication. [Citations.] Whether a right to arbitrate has been waived will depend upon the facts and circumstances of each case. [Citation.] But the particular facts must be viewed in light of the strong policy favoring arbitration. [Citation.] Thus, the party claiming waiver has a heavy burden; and a waiver will not be lightly inferred. [Citations.]" (*Id.* at p. 234.) Absent any showing that his written employment agreement with FESCO was either expressly or implicitly inconsistent with his arbitration obligation under Form U-4, Cione may not rely on the written employment agreement's silence about dispute resolution to establish that such agreement superseded his Form U-4 obligation to arbitrate. (*Ibid.*; cf. *J. Alexander Securities, Inc.* v. *Mendez* (1993) 17 Cal.App.4th 1083, 1093 [21 Cal.Rptr.2d 826]; *Hall* v. *Nomura Securities International* (1990) 219 Cal.App.3d 43, 46-48 [268 Cal.Rptr. 45].)[12]

Further, even if we were to deem Cione's written employment agreement with FESCO to be wholly integrated, we would nonetheless conclude

---

[10]"An integration may be partial as well as complete. In other words, the parties may intend a writing to finally and completely express certain terms of their agreement rather than the agreement in its entirety. [Citation.]" (*Hayter Trucking, Inc.* v. *Shell Western E&P, Inc., supra,* 18 Cal.App.4th at p. 14.)

In *Wallis* v. *Farmers Group, Inc., supra,* 220 Cal.App.3d 718, the appellate court concluded an agreement not covering all subjects related to the parties' employment relationship was not intended to be a complete and final expression of the parties' agreement. (*Id.* at p. 729-730.)

[11]Registration with self-regulatory organizations such as NASD was mandatory for broker-dealers and their associated persons. (15 U.S.C. §§ 78f, 78o.)

[12]In *Hall* v. *Nomura Securities International, supra,* 219 Cal.App.3d 43, the appellate court implicitly held that a Form U-4 arbitration agreement was enforceable even though the employee and employer had a separate employment agreement not containing an arbitration provision. (*Id.* at pp. 46-48.)

Cione's Form U-4 arbitration obligation was not superseded. Evidence would be properly admissible " 'to prove the existence of a separate . . . agreement as to any matter on which the document is silent and is not inconsistent with its terms' . . . even though the instrument appeared to state a complete agreement. [Citations.]" (*Masterson* v. *Sine* (1968) 68 Cal.2d 222, 226 [65 Cal.Rptr. 545, 436 P.2d 561].) Since the written employment agreement was silent on the forum for dispute resolution, Cione's Form U-4 arbitration agreement with NASD was probative and admissible as not inconsistent with the terms of such employment agreement. Hence, since the written employment agreement was reasonably susceptible to the meaning that it did not supersede the Form U-4, any doubts must be resolved in favor of arbitration. (*Thorup* v. *Dean Witter Reynolds, Inc.*, *supra*, 180 Cal.App.3d at p. 234.)

Cione's purported evidence of custom, practice and usage in the securities industry was insufficient to support a contrary result. As noted, Cione submitted his declaration asserting that NASD member firms ordinarily inserted specific arbitration clauses into written employment contracts if the parties actually wished to arbitrate their employment disputes. Cione also submitted three assertedly "sample" employment agreements containing arbitration and integration clauses. Citing such evidence, Cione contends the absence of any arbitration provision in his written employment agreement with FESCO compelled a conclusion this lawsuit was not subject to arbitration. However, although Cione asserts such purported evidence of custom, practice and usage in the securities industry in May 1991 was properly admissible to explain the meaning of his written employment agreement with FESCO (*Hayter Trucking, Inc.* v. *Shell Western E&P, Inc.*, *supra*, 18 Cal.App.4th 1),[13] the record indicates Cione did not receive any of the three asserted "sample" industry agreements until at least seven months after he executed the written employment agreement with FESCO. Further, Cione did not attempt to present any other evidence suggesting that during the time of negotiating and executing their written employment agreement FESCO

[13]"Generally speaking, words in a contract are to be construed according to their plain, ordinary, popular or legal meaning, as the case may be. However, particular expressions may, by trade usage, acquire a different meaning in reference to the subject matter of a contract. If both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage and parol evidence is admissible to establish the trade usage even though the words in their ordinary or legal meaning are entirely unambiguous. [Citation.]" (*Hayter Trucking, Inc.* v. *Shell Western E&P, Inc.*, *supra*, 18 Cal.App.4th at p. 15.) " 'Usage' is a uniform practice or course of conduct followed in certain lines of business or professions, or in some procedure or phase of a business or profession. When an established usage is known to the parties to a transaction, it becomes a rule of law which the courts will recognize in determining the rights of parties whose relations come within the usage, absent a controlling statute. [Citation.]" (*Id.* at pp. 15-16.)

and Cione ever discussed the issue of Cione's Form U-4 arbitration agreement with NASD. Hence, on this record we cannot say the parties had a clear mutual understanding that an employment termination dispute would not be subject to arbitration.

In sum, applying general state law principles involving revocation and enforcement of contracts, we conclude that by entering into the written employment agreement with Cione, FESCO did not waive its right to compel arbitration as a third party beneficiary of the arbitration clause contained in Cione's Form U-4's agreement with NASD. Thus, the Form U-4 arbitration clause was not superseded by Cione's separate written employment agreement with FESCO. (*Thorup* v. *Dean Witter Reynolds, Inc., supra,* 180 Cal.App.3d at p. 234; *O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. at p. 1277.) Since the Form U-4 agreement was not otherwise rescinded or extinguished by Cione or NASD (Civ. Code, §§ 1531, subd. 1, 1689; *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 317-318 [231 Cal.Rptr. 820]),[14] the arbitration clause of Form U-4 remained subject to enforcement by FESCO despite the existence of its written employment agreement with Cione.

3

*Scope of Arbitration Agreement*

█ The Form U-4 executed by Cione provided that any dispute arising between FESCO and Cione would be arbitrated under the rules of NASD "as may be amended from time to time." As noted, at the time of Cione's separation from employment with FESCO in June 1994, NASD's rules as amended in October 1993 expressly provided "for compulsory arbitration of employment related-disputes. [Citation.]" (*Scher* v. *Equitable Life Assur. Soc. of U.S., supra,* 866 F.Supp. at p. 777.) Citing *Prudential Ins. Co. of America* v. *Lai* (9th Cir. 1994) 42 F.3d 1299 and *Kresock* v. *Bankers Trust Co.* (7th Cir. 1994) 21 F.3d 176, Cione contends his employment-based claims against FESCO fell outside the scope of his Form U-4 arbitration agreement

---

[14]A contract may be rescinded only "if all the parties thereto consent." (Civ. Code, § 1689.) Under principles of novation, a new contract may be substituted for an old contract by "the substitution of a new obligation between the same parties, with intent to extinguish the old obligation." (Civ. Code, § 1531, subd. 1.) In *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d 299, the appellate court found no novation of a prior agreement where a subsequent agreement made no mention of canceling the prior agreement's obligations. (*Id.* at pp. 317-318.)

because NASD's rules assertedly did not require NASD arbitration of employment disputes until 1993.[15] Citing *Renteria* v. *Prudential Ins. Co. of America* (9th Cir. 1997) 113 F.3d 1104 and *Prudential Ins. Co. of America* v. *Lai,* Cione also contends that even if the Form U-4 arbitration agreement were otherwise applicable here, arbitration could nonetheless not be compelled because the record contained no indication Cione knowingly waived any of his rights to judicial adjudication of his employment discrimination claims. However, as we shall explain, the cases relied upon by Cione are contrary to the weight of authority.

■ Where, as here, the existence of a binding arbitration agreement has been established under state law principles involving contracts generally, ". . . questions concerning the construction and scope of the arbitration clause are determined by federal law. [Citation.]" (*Baker* v. *Aubry, supra,* 216 Cal.App.3d at p. 1263; accord, *Gilmer* v. *Interstate/Johnson Lane Corp., supra,* 500 U.S. at p. 25, fn. 2 [111 S.Ct. at pp. 1651-1652]; *Bayma* v. *Smith Barney, Harris Upham and Co., Inc.* (9th Cir. 1986) 784 F.2d 1023, 1025; *Platt Pacific, Inc.* v. *Andelson, supra,* 6 Cal.4th at p. 313; *Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 653; *Heily* v. *Superior Court, supra,* 202 Cal.App.3d at pp. 258-259; *Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1148 [219 Cal.Rptr. 616].)

A court "must first determine if the scope of the agreement includes the dispute at hand, and courts will not force parties into arbitration when such was clearly not the intent of the parties. [Citation.]" (*O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. at p. 1276.) However, " '[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,' and thus, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " (*Armijo* v. *Prudential Ins. Co. of America* (10th Cir. 1995) 72 F.3d 793, 797, citing *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 3353-3354, 87 L.Ed.2d 444].) As indicated by the United States Supreme Court, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

---

[15]Before the 1993 amendments, section 1 of the NASD Code provided in relevant part that " 'any dispute, claim, or controversy arising out of or in connection *with the business* of any member of the Association . . . between or among members . . . [or] between or among members and . . . others' [was] eligible for submission to arbitration. [Citations.]" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc., supra,* 8 Cal.App.4th at p. 463, italics in original.) Before the 1993 amendments, section 8(a) of the NASD Code "require[d] arbitration of any such dispute 'at the instance of . . . a member against a person associated with a member . . . .' [Citations.]" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc., supra,* at p. 463.)

arbitrability." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [103 S.Ct. 927, 941, 74 L.Ed.2d 765], fn. omitted; cited with approval in *Mastrobuono* v. *Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 62, fn. 8 [115 S.Ct. 1212, 1218, 131 L.Ed.2d 76].) "Although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide. [Citation.]" (*Armijo* v. *Prudential Ins. Co. of America, supra,* at p. 797.) "The parties' intentions are important 'but those intentions are generously construed as to issues of arbitrability.' [Citation.]" (*O'Donnell* v. *First Investors Corp., supra,* at p. 1277.)

■ Similarly, under California law, " '[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 652.) " ' "A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' [Citation.]" [Citation.]' " (*Pagett* v. *Hawaiian Ins. Co., supra,* 45 Cal.App.3d at p. 624; accord, *Retail Clerks Union, Local 775* v. *Purity Stores, Inc.* (1974) 41 Cal.App.3d 225, 231 [116 Cal.Rptr. 40].)

"[U]nder section 1281.2, it is the trial court that determines if there is a duty to arbitrate the particular controversy which has arisen between the parties. [Citation.] In performing its duty to determine if the parties have agreed to arbitrate that type of controversy, the court is necessarily required 'to examine and, to a limited extent, construe the underlying agreement.' [Citation.] [¶] Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute. [Citation.] . . . Thus, we see that if there is a rule of thumb regarding contractual arbitration, it is that such arbitration is a highly favored means of dispute resolution." (*United Transportation Union* v. *Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808-809 [9 Cal.Rptr.2d 702], cited with approval in *Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 652.)

■ Applying those standards, various California and federal courts have rejected contentions similar to Cione's that until its October 1993

amendments the NASD Code did not require arbitration of employment related disputes between employees and their NASD member-employers. (E.g., *Spellman* v. *Securities, Annuities & Ins. Services, Inc.*, *supra*, 8 Cal.App.4th 452; *Armijo* v. *Prudential Ins. Co. of America*, *supra*, 72 F.3d 793; *Kidd* v. *Equitable Life Assur. Soc. of U.S.* (11th Cir. 1994) 32 F.3d 516, 519; *Hall* v. *MetLife Resources*, *supra*, Fed. Sec. L. Rep. (CCH) ¶ 98,742, p. 4; *O'Donnell* v. *First Investors Corp.*, *supra*, 872 F.Supp. at p. 1278; *Prudential Ins. Co. of America* v. *Shammas* (W.D.Mich. 1993) 865 F.Supp. 429, 432.) Indeed, in *Armijo* v. *Prudential Ins. Co. of America*, *supra*, 72 F.3d 793, the appellate court observed that ". . . *most* of the other courts that have addressed the arbitrability of employment disputes under the November 1992 NASD Code have concluded that such disputes are arbitrable." (*Id.* at p. 799, italics added.)

In *Spellman* v. *Securities, Annuities' & Ins. Services, Inc.*, *supra*, 8 Cal.App.4th 452, a case arising before the October 1993 amendments to the NASD Code, the plaintiff signed a Form U-4 containing substantially the same language as the form signed by Cione. (*Id.* at p. 456.) Noting the provisions of NASD Code sections 1 and 8(a) before those amendments were "very broad" in scope, the appellate court in *Spellman* concluded such provisions were " '. . . certainly broad enough to cover a dispute between an NASD member and an employee, not stemming from the purchase and sale of securities.' [Citations.] [¶] Significantly, courts have broadly construed language similar to that contained in NASD rules . . . as to the arbitrability of claims of nonmembers ' "arising out of the business" of a member.' [Citations.] Such claims, arising out of employment or termination of employment and not directly entailing transactions, are arbitrable regardless of whether the employment contract itself is invoked. [Citation.]" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc.*, *supra*, at pp. 464-465.) The appellate court also stated: "Congress has delegated broad powers to self-regulatory organizations within the securities industry, including NASD, to police the conduct of their members. [Citations.] [¶] This broad legislative delegation of power strengthens the presumption that disputes among members of such organizations and individuals associated therewith are arbitrable. [Citation.]" (*Id.* at p. 464.)[16]

In *Armijo* v. *Prudential Ins. Co. of America*, *supra*, 72 F.3d 793, the appellate court noted: "NASD has indicated as early as 1987 that the Code applies to disputes between employers and sales representatives. [Citation.] The association stated that the purpose of the 1993 amendment was simply

[16]As early as 1985, a California appellate court had observed that "disputes between a member of a national stock exchange and its employee are consistently held to be arbitrable . . . ." (*Tonetti* v. *Shirley*, *supra*, 173 Cal.App.3d at p. 1148.)

to 'clear up any ambiguity' and 'to assure' that employment disputes are arbitrable under Section 8. [Citations.]" (*Id.* at pp. 799-800.) Similarly, in *O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. 1274, the court concluded the October 1993 amendments to the NASD Code merely clarified the then existing rule encompassing employment disputes. (*Id.* at p. 1278.) The court observed: "NASD had interpreted its Code to include employment disputes as early as 1987. [Citation.] Thus, ' "NASD has taken the position that employment disputes are arbitrable under Section 8, but in order to clear up any ambiguity, it is proposing the changes." ' [Citation.] While the amendment, seen in a vacuum, would seem to be a change in the existing policy, when seen in the light of NASD's public announcement that it is a clarification, the Court should give credence to the intent of the maker of the Code." (*O'Donnell* v. *First Investors Corp., supra,* at p. 1278.)[17] In the same vein, the court in *Wojcik* v. *Aetna Life Ins. & Annuity Co., supra,* 901 F.Supp. 1282, observed that NASD "explained that the amendments were designed to clarify its long-held understanding that employment disputes are arbitrable under section 8 of the Code. [Citation.]" (*Id.* at p. 1287, fn. 6.)

Moreover, even if the preamendment NASD Code were construed as not requiring submission of the parties' employment dispute to arbitration, arbitration would nonetheless be compelled since such dispute arose after the amendments' effective date. As noted, by expressly agreeing in the Form U-4 to abide by NASD rules as they might "be amended from time to time," Cione at the time of contracting intended to be bound by amendments to those rules. The 1993 amendments to the NASD Code govern arbitrability issues in disputes arising, as here, after the amendments' effective date of October 1, 1993. (*Wojcik* v. *Aetna Life Ins. and Annuity Co., supra,* 901 F.Supp. at pp. 1286-1289; *Scher* v. *Equitable Life Assur. Soc. of U.S., supra,* 866 F.Supp. 776; *Hall* v. *MetLife Resources, supra,* Fed. Sec. L. Rep. (CCH) ¶ 98,742, p. 4.) In *Wojcik* the court concluded: "Since Wojcik filed his claim after the effective date of the amendment, the amendment is applicable to Wojcik's case without retroactive application." (*Wojcik* v. *Aetna Life Ins. and Annuity Co., supra,* at pp. 1288-1289.) In *Scher* the court stated: "Scher agreed to comply with the NASD rules 'as they are and may be adopted, changed or amended from time to time.' [Citation.] Significantly, the amendment occurred prior to the filing of this law suit. Scher must comply with the NASD Code as it existed at the time he commenced his action." (*Scher* v. *Equitable Life Assur. Soc. of U.S., supra,* at p. 778.)

---

[17]In addition to rejecting a contention that actions involving employment contracts before the October 1993 amendments to the NASD Code did not come within the scope of mandatory arbitration, the court in *O'Donnell* v. *First Investors Corp., supra,* 872 F.Supp. 1274, also rejected a contention that a Form U-4 arbitration clause was superseded by a later memorandum of understanding not containing an arbitration clause.

Finally, Cione's reliance on *Renteria v. Prudential Ins. Co. of America*, *supra*, 113 F.3d 1104 (*Renteria*), is unavailing. Citing *Prudential Ins. Co. of America v. Lai*, *supra*, 42 F.3d 1299 (*Lai*), the appellate court in *Renteria* observed: "In *Lai*, we held that 'a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration.' [Citation.] This 'knowing waiver' requirement, which we concluded was 'apparent from the text and legislative history of Title VII,' [citation] 'reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes'—'a policy that is at least as strong as our public policy in favor of arbitration.' [Citation.]" (*Renteria*, *supra*, at pp. 1105-1106, fn. omitted.) However, the *Lai/Renteria* knowing waiver requirement does not apply here since Cione's claim asserts age discrimination, not sex discrimination under title VII of the Federal Civil Right Act of 1964 (42 U.S.C. § 2000e et seq.) or analogous California statutes. Under federal law, age discrimination is prohibited by the Age Discrimination in Employment Act (ADEA), not by title VII. In *Lai*, the court observed that *Gilmer v. Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. 20, "made it clear that the ADEA does not bar agreements to arbitrate federal age discrimination in employment claims." (*Lai*, *supra*, at p. 1303, fn. omitted.) Similarly, in *Kuehner v. Dickinson & Co.* (9th Cir. 1996) 84 F.3d 316 (*Kuehner*), the court indicated the *Lai* knowing waiver requirement did not apply to claims under the ADEA or to wrongful discharge claims under California statutory law. (*Kuehner*, *supra*, at p. 319.) Indeed, citing *Kuehner*, the court in *Renteria* expressly acknowledged that the "*Lai* knowing waiver requirement applies only to a comparatively small class of claims arising under title VII or similar laws . . . [and] would have no bearing on various other classes of claims . . . . [Citation.]" (*Renteria*, *supra*, at p. 1107.) We also note that even as to title VII cases the "knowing waiver" portion of *Lai* restated in *Renteria* has been severely criticized by other federal courts and by another California appellate court. (*Brookwood* v. *Bank of America* (1996) 45 Cal.App.4th 1667, 1673, fn. 5 [53 Cal.Rptr.2d 515], citing *Maye* v. *Smith Barney Inc.* (S.D.N.Y. 1995) 897 F.Supp. 100, 107.)[18] *Lai* and *Renteria* are not controlling authority as to the facts present here.

In sum, Cione's employment dispute with FESCO came within the scope of the arbitrability clause of his Form U-4 agreement with NASD.

---

[18]See also *Cremin* v. *Merrill Lynch Pierce Fenner & Smith, Inc.* (N.D.Ill. 1997) 957 F.Supp. 1460, 1474; *Topf* v. *Warnaco, Inc.* (D.Conn. 1996) 942 F.Supp. 762, 771; *Johnson* v. *Hubbard Broadcasting, Inc.* (D.Minn. 1996) 940 F.Supp. 1447, 1455; *Prudential Ins. Co. of America Sales Prac. Litig.* (D.N.J. 1996) 924 F.Supp. 627, 642; *Beauchamp* v. *Great West Life Assur. Co.* (E.D.Mich. 1996) 918 F.Supp. 1091, 1096; *Pitter* v. *Prudential Life Ins. Co. of America* (E.D.N.Y. 1995) 906 F.Supp. 130, 139.

## B

### *Conclusion*

FESCO as a third party beneficiary sought enforcement of the arbitration clause of Cione's Form U-4 agreement with NASD. Although Cione's later written employment agreement with FESCO contained an integration clause indicating such agreement was complete between Cione and FESCO with respect to its subject matter, such agreement did not purport to say anything about the Form U-4 or the forum for resolving employment disputes. Hence, the integration clause did not mean the written employment agreement applied to the exclusion of Cione's contract with NASD. Reviewing this record in light of the federal and state policies favoring arbitration, we conclude the superior court should have granted FESCO's motion to compel arbitration.

### DISPOSITION

The order is reversed. The superior court is directed to enter a new order granting FESCO's motion to compel arbitration. FESCO is awarded costs on appeal.

Work, J., and Haller, J., concurred.